IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISON

| | | |
|---|---|---|
| EDGE196, LLC AND JAIKRISHNA PATEL | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | Civil Action  No. _____ |
| | § | |
| JOINTER, INC., JUDE G. REGEV, | § | |
| DEBBIE ROSENBLUM, AND KYLE WHITE | § | |
| | § | |
| *Defendants.* | § | JURY TRIAL DEMANDED |

## COMPLAINT

1.      Plaintiff EDGE196, LLC ("EDGE") and its founder Jaikrishna "Jay" Patel (collectively, "Plaintiffs") bring this action against Jointer, Inc., Jude G. Regev, Debbie Rosenblum, and Kyle White (collectively, "Defendants"). Plaintiffs seek to recover damages, declarative relief, interest, and attorneys' fees and costs against Defendants based on Defendants' breaches of its contractual obligations, breaches of fiduciary duty, and other wrongful conduct. The wrongful conduct at issue in this case was perpetrated by Jointer itself and the founders of Jointer, including defendants Jude G. Regev, Jointer's CEO and the sole member of its Board of Directors; Debbie Rosenblum, Jointer's People Architect; and Kyle White, Jointer's Chief Marketing Officer.

2.      This case stems from Jointer—a blockchain-based syndication startup that acts as an alternative to Commercial Real Estate crowdfunding and REITs—and it's founders' repeated abuse of its investors, including Plaintiffs, by stalling the launch of the platform, misusing investor funds, engaging in a "bonus" JNTR token distribution scheme to retain full control over Jointer, maintaining a one-person Board of Directors with Regev as the only sitting member, and breaching various agreements that Jointer had with investors. In the words of Jointer's own CEO and sole Board member, he favors ***"the company above everyone, not just investors"*** and his particular

view of the company (which he solely controls despite claiming that it is a digital decentralized autonomous organization engaged in decentralized finance) *"comes first."* Regev's approach to corporate governance is one where Regev *"serve[s] Jointer"* or rather, himself—the sole member of Jointer's Board and 80% shareholder—*"at any cost,"* violating Jointer's and Regev's duties to its investors.

3.      When investors, including Mr. Patel, raised issues with Regev's mistreatment of Jointer shareholders and Jointer's abusive actions, Regev first attempted to manipulate EDGE into giving up several accrued rights and causes of action under the guise of a Second Addendum and then a Distribution Agreement. After Mr. Patel refused to give up valuable rights under the proposed contract amendments,  Regev and Jointer employed a scorched earth campaign pursuant to which Jointer both interfered with EDGE's relationship with CoinTiger and later threatened to report Mr. Patel and EDGE for attempted fraud to the SEC and send a copy of that complaint to *"Cayman Islands Monetary Authority, SS&C, NASDAQ, NYSE, and all other jurisdictions or institutes [wherein EDGE] ha[s] an entity or business."*

4.      Regev's conduct has been so egregious that he can no longer serve as Jointer's sole board member, as he refuses to act with the requisite fiduciary obligations.  Regev should be removed from the Jointer Board and replaced with independent Board members who will properly exercise their fiduciary obligations to Jointer's investors and shareholders.

## Parties

5.      EDGE is a Delaware Limited Liability Company that is headquartered in Sugar Land, Texas. EDGE is a single-member LLC that is 100% owned by Jay Patel.  Patel, in turn, is a citizen of Texas.

6.      Jointer is a Delaware corporation and with its principal place of business in Silicon Valley, California.

7.      Jude G. Regev is Jointer's CEO and the sole member of its Board of Directors. Regev is a citizen of the State of California.

8.      Debbie Rosenblum is Jointer's People Architect.  Rosenblum is a citizen of the

State of Colorado.

9.      Kyle White is Jointer's Chief Marketing Officer.  White is a citizen of the State of Ohio.

10.      EDGE and Mr. Patel are informed and believe that Rosenblum and White are founders of Jointer and are responsible for the occurrences herein alleged, and that the damages as herein alleged were proximately caused by Jointer and Regev, and as such, they are jointly and severally liable for the damages caused to Plaintiffs.

11.      Plaintiffs are informed and believe that each Defendant herein, at all pertinent times hereto, was and is the agent, servant, employee, joint venturer, alter ego, and/or partner of each of the other co-Defendants, with full knowledge, permission and consent of each and every remaining defendant, and in doing the things alleged herein, each co-Defendant was acting within the scope of authority conferred upon that party by consent, approval and/or ratification, whether said authority was actual or apparent.

## Jurisdiction and Venue

12.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1).  This dispute is between citizens of different states and the amount in controversy exceeds $75,000.

13.      Personal jurisdiction and venue in this district is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or giving rise to Plaintiffs' claims occurred in this district.  The written contracts between EDGE, Mr. Patel, and Jointer, including but not limited to the SAFE Agreement, the License for Jointer's Technology and Solutions, and the Addendum to the License for Jointer's Technology and Solutions (referred to as the "SAFE," "License," and "Addendum" respectively). These contracts were entered into and had obligations arising in this District, within the jurisdiction and venue of this Court. Moreover, the Defendants' wrongful conduct occurred largely in this district. Regev engaged in activity in this District as part of his scheme to deprive Plaintiffs of their benefits under the applicable contracts and in breach of his fiduciary obligations to Plaintiffs.

14.     EDGE and Patel also bring this declaratory judgment action pursuant to 28 U.S.C. §2201(a) to resolve an actual controversy between Jointer and Regev on the one hand and EDGE and Patel on the other.

**Factual Allegations**

15.     Jointer was founded in March 2016 and is a commercial real estate blockchain startup that strives to simplify the commercial real estate industry so that every investor, even one with zero knowledge or experience, will have the opportunity to lend funds to this historically lucrative asset class. To achieve this, Jointer developed a platform with the goal of providing high returns, increased liquidity, and minimized risk. Jointer allows investors to pool funds through its token system and get returns based on three digital asset class models. Every day, Jointer will hold a daily auction allowing investors to win JNTR at a discount where the discount increases the more money is invested. Investors participate in the daily Jointer Auction by contributing funds. And the daily JNTR token supply is distributed to all investors on a pro-rata basis. The tokens are then held by an investor and can be sold at any time based on the current face value of the token.

16.     The funds raised by Jointer will be used to purchase commercial real estate properties. Interested property buyers can make a commercial real estate purchase by partnering with Jointer. In that situation, the property buyer contributes only 1% of the property value while Jointer contributes the remaining 99%. The property buyer and Jointer then each receive a 50% ownership in the property and Jointer remains a passive partner but offers its investors 90% downside protection and 24/7 liquidity.

17.     EDGE was conceived in 2016 by Jay Patel who envisioned a need for integrated and interconnected global ecosystems in the startup space. Mr. Patel launched the Alpha version of EDGE in February 2017, which provided startup news, events, stories, and challenges from 196 countries. The related website went live in September 2017.  In January 2018, Mr. Patel made the decision to begin investing in startups. Shortly thereafter EDGE initiated the Global Startup Challenge. This furthered EDGE's goals of: (1) acting as a catalyst between startups, investors,

and service providers; (2) opening avenues to a marketplace in a cross-border ecosystem; and (3) using the digital share economy to assist young companies to realize their potential through the 3-M solutions of EDGE.

18.     During the end of 2017 and the beginning of 2018, EDGE hosted a worldwide startup competition known as the Global Startup Challenge. Over 4,000 fin-tech startups across the globe competed for a $1,000,000 investment. In March 2018, EDGE's global team of experts selected twenty of the startups as finalists. Before the winner was announced, Mr. Patel met with Mr. Regev on a few occasions. During those meetings, Regev repeatedly sought an affirmation that he and Jointer would win the competition—affirmation Mr. Patel declined to provide. Regev was cocksure about Jointer in those meetings, making repeated representations that Jointer would be ***"bigger than Uber,"*** that it would have a ***"trillion dollar market value,"*** and that Jointer would be the ***"number 1 business in the world."*** Regev continued to note that, if he won the competition, the $1,000,000 investment would be worth a ***minimum*** of $20 billion.

19.     Jointer ultimately was announced as the winner of the competition by EDGE experts. Initially, things went smoothly and EDGE invested in Jointer in two tranches. The first tranche was $100,000 paid via wire. The second tranche was $900,000 paid via check presented on stage at the LendIt Fintech Summit. Around the time Jointer won the competition, EDGE expressed interest in investing an additional $1,000,000 in Jointer. That additional investment would be paid after the original prize money from the competition was spent. Mr. Patel's interest in investing this additional money in Jointer was based in part on Regev's representations that Jointer would be launched by early summer 2018.

20.     To commemorate this agreement, the parties entered into a Simple Agreement for Future Equity ("the SAFE") on March 16, 2018. Under that agreement, EDGE agreed to invest

- 5 -

$2,000,000 into Jointer. However, the agreement also imposed several specific obligations on Jointer. One of those obligations was that if "this SAFE has converted into equity of the Company, than then [sic] Company shall use commercially reasonable efforts to ensure that the definitive documents executed in connection with such conversion provide that . . . (iii) the single largest cash investor in the Company's equity that is not otherwise represented on the Board shall have a right to a non-voting Board observer position, subject to customary limitations." SAFE ¶ 5(c).

21.     In agreeing to the additional $1,000,000 investment as part of the SAFE, Regev told Patel that Jointer would do an initial coin offering launch ("ICO") that he expected would raise billions of dollars and would render the need for Patel's additional $1,000,000 investment moot. But the ICO was delayed significantly, and ultimately never launched despite repeated assurances from Regev.

22.     In 2019, Jointer began running out of money and had not yet launched its real estate platform despite claims from Regev that it was ***"ready to go."*** Investors began getting impatient and started questioning Regev's financial decisions. In mid-2019, Mr. Patel learned that Regev was using the funds he had invested to travel to conferences, stay at fancy hotels, and to pay media companies for work that was never delivered. On information and belief, Regev also recklessly invested $100,000 provided by investors in a cryptocurrency pump and dump scheme and justified the ultimate loss of that money by claiming to just take it as "salary." The investors began openly discussing financial irregularities at Jointer and Regev's specific misuse of funds.

23.     Also, in mid-2019, EDGE began working on a two-token model venture capital fund and openly discussed the concept with Regev. Regev told Mr. Patel that he believed a three-token model would work better for EDGE and volunteered to build the three-token model and license it back to Mr. Patel. Regev promised that the three-token model would be ready for launch by September 30, 2018.

- 6 -

24.     In preparation for the upcoming September 30, 2019 launch, on August 9, 2019, Mr. Patel and Mr. Regev entered into a License agreement. The License provided that Jointer would license the following items: (1) a copy of a Jointer White paper; (2) a copy of a Jointer tokenomics paper; (3) a copy of a jointer auction and IEO paper; (4) a copy of a Jointer technical design paper;  (5) a copy of a Jointer SAFT contract; (6) a copy of Legal structure; (7) code ready for the three coins (JNTR, JNTR/x, and JNTR/e); (8) code ready for an Auction page; (9) hosting services on Smart swap; (10) presentations; (11) conversion of Jointer documents to Venture Capital before August 15, 2019, except code integration; (12) Element Zero access to create a stable coin for EDGE called Ecosystem Coin; and (13) any and all documents needed. In exchange for this license and services, Mr. Patel agreed to pay $5,000 upfront to "cover the marketing docs support" and a cash payment of $100,000, which was due "[u]pon complete transfer of all of the above."

25.     Mr. Patel paid the $100,000 in full over a period of time—fulfilling his obligation under the License, despite the fact that Jointer never completed the transfer of all items (1-13) set forth above. Regev, however, unilaterally decided to divert Patel's payments to different Jointer needs and now claims that Mr. Patel only paid $90,000 under the agreement and owes $10,000 more. Jointer and Regev never delivered on their contractual promises under this License and missed the promised launch date.

26.     Desiring the promised material, Patel and EDGE insisted that Jointer perform its obligations under the License. In response, Regev ultimately requested an Addendum to the License from Mr. Patel. That executed Addendum was entered into on January 29, 2020. That Addendum further specified existing and additional technology owed by Jointer and Regev to EDGE and Patel in exchange for additional money and terms. In connection with the Addendum, Regev promised the three-token model would be ready to launch in April 2020.

27.     Specifically, that Addendum required Patel to pay an additional $15,000 to complete the original work and also make certain "Improvements," including (1) providing a solution for Whitelist, which Regev said would take seven days to develop; (2) integrating

EDGE196 wallet to the Jointer system, which Regev said would take ten days to develop; and (3) creating multiple smart contracts between the relevant entities, which Regev said would take fourteen days to develop. The Addendum further noted that the "auction process and multiple smart contract[s] between entities will be live within 3 weeks from the date of the payment of $10,000," which is the amount Regev believed Patel had under-paid on the initial license agreement, plus the payment of the $8,000 in initial development costs. The Addendum also required Mr. Patel and EDGE to invest the second $1,000,000 in Jointer as outlined in the SAFE in a particular fashion with installment payments throughout early 2020 with the full million to have been paid by May 1, 2020. Due to Regev's failure to launch on several occasions, the payments were optional and conditioned on Jointer completing audits and making specific fixes to the technology, as the Addendum provided that "[i]n the event EDGE196 and/or Jaikrishna Patel fails to pay the Investment Commitment in full, the equity for the investment and the rebate will be credited on a pro-rata basis."

28.     The Addendum also included a number of favorable terms for Jointer. First, although it allowed Patel and EDGE to sublicense its rights under the license under specific circumstances, it required them to pay Jointer a "one-time setup fee of $50k." Second, the Addendum provided that EDGE would begin paying its "pro-rata share" of Jointer's monthly development costs—costs estimated by the Addendum to be $16,000 a month—once "all Improvements and Audits have been completed, the Licensee Code has been delivered and the EDGE196 platform developed by the Licensor (not including the marketplace) is live." Third, the Addendum included a non-compete preventing EDGE from "assigning, or allowing the use of, the Licensee Code or the Jointer Technology and Solutions to any entity or person, except an authorized Subsidiary." It also prohibited EDGE from using these materials to "compete with Licensor."

29.     EDGE and Mr. Patel fulfilled all of their obligations under the License and Addendum and paid for all of the improvements and the monthly code development under those agreements despite Regev's repeated failures to launch.

- 8 -

30.     During February and March 2020, Regev and Kyle White began discussing plans to launch the JNTR and EDGEX tokens on CoinTiger—an exchange based out of Singapore. Regev and White instructed Patel that Patel needed to enter into a SAFE with CoinTiger and invest $5,000,000 in CoinTiger based on certain token sale milestones.  Regev and White also told Patel that he had to pay $250,000 to CoinTiger so that the JNTR and EDGEX tokens could be simultaneously launched on the CoinTiger exchange. In reliance on Regev and White's promise to integrate and launch both the JNTR and EDGEX tokens on CoinTiger, EDGE entered into the SAFE with CoinTiger in March 2020. Thereafter, Patel paid $250,000 to CoinTiger to cover the integration and launch of both JNTR and EDGEX. Patel understood that, as part of this arrangement, Jointer would perform the integration of EDGEX into the Jointer platform so that the two token types could be launched together. Patel made the payment as JNTR and Regev could not afford to do so. The new plan was to launch the JNTR and EDGEX tokens on CoinTiger no later than August 30, 2020.

31.     However, in August 2020—just before the launch of EDGEX and JNTR, which was re-scheduled for September 1, 2020—Regev out of the blue demanded that EDGE and Mr. Patel enter into a Second Addendum. That agreement attempted to rewrite the existing License and Addendum by adding the following inappropriate demands:

- That EDGE must accept the code on an "as is where is" basis with no warranty and indemnification.

- That EDGE must subject the use of the technology by EDGE to a vote by the Jointer Community.

- That EDGE must accept additional non-compete language prohibiting it from competing with Jointer subsidiaries *without* having the language mutually apply to prevent Jointer from competing with EDGE subsidiaries.

- That EDGE must pay Jointer $706,582 despite clear language in the addendum and in other documents that the additional investment is not mandatory.

- That EDGE must give up the right to fork or depend on Jointer to fix any bugs or code issues until a total of $2 million was paid.

- That new indemnification language, limitation of liability and Intellectual Property provisions would be imposed on EDGE.

32.     In addition to these demands, Jointer and Regev refused to provide EDGE and Patel with the code and auction display website that was required by the Addendum and paid for by EDGE. These new conditions were designed to excuse Jointer's failure to comply with its contractual obligations, which required an imminent launch of the tokens. Jointer and Regev wrongfully used the additional addendum as an excuse to delay the launch and place blame on EDGE for the inability to provide the contracted-for services.

33.     Despite Jointer and Regev's unreasonable demands, EDGE and Patel spent over a month trying to negotiate fair terms. Jointer and Regev refused all proposals, and Patel did not sign the Second Addendum. As the parties got closer to EDGEX's launch, Regev sent Patel and EDGE a proposed Digital Asset Pre-Mint Distribution Agreement that made similar demands. Specifically, the Distribution Agreement requested from EDGE and Patel a covenant not to sue under the existing License and Addendum agreements. But it also had the following clauses that EDGE found problematic: (1) a non-disparagement clause in which Regev had the power to "solely" determine what constituted disparagement; (2) a release of "any and all actions, causes, claims, demands, and damages, in law, equity or otherwise . . . whether now known or unknown, that existed prior to the date the Digital Assets were distributed to you, that you may have against the Released Parties that arise out of or are related to any investment in, or work you have done for, the company from the beginning of the date of this Agreement";  (3) a provision that stripped away Patel's resell rights under applicable law by subjecting the sale of the tokens to a distribution Gateway that was controlled by and skewed in favor Jointer; and (4) provisions that created additional barriers and constituted a refusal of Jointer to issue tokens in accordance with the SAFE.

34.     Concerned about these provisions, EDGE marked-up the draft Distribution Agreement and raised its concerns. Jointer declined to accept any of EDGE's proposed edits and

- 10 -

refused to meaningfully negotiate.  As a result, EDGE did not enter into the Distribution Agreement.

35.     Jointer also announced that it would be engaging in a "special" JNTR "bonus" token distribution scheme under the guise of providing additional token to Jointer investors. In reality, the "bonus" tokens were nothing more than a rouse to provide Jointer (ultimately, Regev) with over 8.6 billion tokens and force unreasonable restrictions and demands upon Patel. On information and belief, this bonus was based on an inflated, false valuation of the company and amounted to a breach of fiduciary duty propagated by Jointer, Regev, White, and Debbie Rosenblum. This was done to allow a small number of Jointer executives to retain full control over Jointer despite publicly claiming that it is a digital decentralized autonomous organization or a decentralized finance project. In reality, there is nothing decentralized about it; the company is entirely controlled by Regev who is the only sitting member of the Board of Directors.

36.     Pursuant to Paragraph 5(c) of the SAFE, EDGE and Patel, who remain the single largest cash investor in Jointer that is not otherwise represented by the Board, have requested the right of a non-voting Board observer position guaranteed to them under the contract. But Regev has routinely denied this request in breach of that agreement.

37.     Worse yet, just weeks before the anticipated launch, Regev and Jointer approached CoinTiger—a major cryptocurrency exchange that offers trading services and was scheduled to list EDGEX and JNTR together. On information and belief, Jointer Chief Marketing Officer Kyle White (together with Regev) told CoinTiger  that Jointer was not responsible for the integration of EDGEX. This was done to allow Jointer's staff to focus on the Jointer integration since they did not have the capability to perform both the integrations of JNTR and EDGEX as promised. To conceal this activity, Jointer's team members—including Rosenblum, Regev, and White— conspired to remove Mr. Patel from the CoinTiger integration telegram group. They also worked to launch JNTR on CoinTiger without EDGEX.

38.     This caused significant harm to EDGE, which had already paid $250,000 for the CoinTiger launch of both EDGEX and JNTR on the exchange. It also left EDGE in a lurch as it

- 11 -

was unable to perform the integration itself since Jointer retained full control of the code and never provided it to EDGE. Ultimately EDGE had to inform CoinTiger that they could not use the $250,000 to launch JNTR.  The inability to launch the EDGEX tokens caused significant harm to EDGE.  EDGE has been deprived of the opportunity to consummate its business plans in the start-up space, resulting significant loss of profits.

39.     Mr. White additionally caused harm to EDGE by charging EDGE exorbitant above-market prices to gain extra benefits for Jointer and to obtain kickbacks or other benefits for Jointer in exchange for the listing and marketing of EDGEX. Mr. White was caught lying about the cost to list EDGEX on particular exchanges in an attempt to charge EDGE double fees and essentially force EDGE to pay for Jointer's JNTR listing in an attempt to "piggyback" off of EDGE's capital.

40.     Patel repeatedly raised these issues to Jointer and Regev and sought a resolution of the issues before paying the final balance owed on the SAFE. To date, Patel and EDGE have invested a total of $1,327,012.00 in Jointer. This figure does not count the $250,000.00 that Patel paid for the CoinTiger launch. Based on the amount invested to date, Patel is currently entitled to an approximate 11.25% stake in the company and is its largest stakeholder by a longshot behind only Regev.  Patel and Edge are also entitled to increase their stake in Jointer by making an additional investment of funds.

41.     In a blatant disregard of Patel and Edge's rights, in mid-September 2020, Regev stated that he was going to ***"cancel"*** the SAFE and to ***"count all [of EDGE's] investment and wiring to Jointer or in Jointer . . . as [a] pro-rata investment under [the] SAFE."*** Regev then threatened Patel and told him not to file a lawsuit since he would do harm to his own investment.

42.     The next day, Regev threatened to strip EDGE of 1,553,952,667 JNTR bonus tokens (the number of tokes that EDGE would receive based on a $2 million investment) and stated that he would "***report a fraud attempt against you and all other EGDE196 principles with the SEC and send a copy of that claim to Cayman Islands Monetary Authority, SS&C, NASDAQ, NYSE, and all other jurisdictions or institutes that you have an entity or business with including providers and underwriters that obligate to comply and mention to your LP investors that a***

*fraud claim filed against you."* He went on to state that Jointer desired to *"return [Patel's] money and remove [him] as an investor with Jointer."* After Patel responded, Regev announced unilaterally that the *"EDG196 [sic] license is invalid and canceled completely and 100% of any funds that you ever invested or wired to Jointer for that license or to other providers on Jointer['s] behalf . . . [will be] enrolled as investment under SAFE."* He further cancelled Patel's bonus and told him that he would *"face tax issue to pay taxes on the current market price."* All of this was an attempt to strong-arm Patel to acquiesce to Regev's wishes and sign a Second Addendum and Distribution Agreement. Regev said as much when he noted that Patel *"still ha[d] the option"* <u>to avoid this outcome.</u>

43.   Regev's decision to launch Jointer on September 27, 2020 -- separate and apart from the launch of EDGEX -- has caused further damage to EDGE. This was a strategic ploy by Regev, who did not want to launch his own platform at the same time as EDGEX because he knew EDGEX would be a direct competitor for consumer dollars. Regev was concerned that if Jointer launched both JNTR and EDGEX at the same time and as part of the same offering, the same token purchasers may split their money between the two platforms, hurting JNTR. This is the reason for Regev's breach of his promise to integrate EDGEX into Jointer's platform. Moreover, in launching JNTR, Regev who calls himself "Yoda" remarked:

> Taking advice from Master Yoda, 'Do or do not, there is no try.' After four pivots and a very long two years of hard work we built a sophisticated and first of its kind DeFi model, without even knowing that there would be a DeFi industry in existence. Now here we are, 27 Auction days in and able to show that we designed a solution that first protects the com—munity and then after the community benefits, then Jointer does. This is the only way to build (buidl), you cannot put the community at risk.

YAHOO! News, *World's First Real Estate DeFi Hits 30X After Auction Launch, available at* <u>https://news.yahoo.com/worlds-first-real-estate-defi-123300772.html</u> (last accessed September 30, 2020). But, in reality, Regev's actions demonstrate that his interest is not with the community, but with Jointer, whom he stated he favors *"above everyone"* since the Company *"comes first."*

44.     Patel and EDGE paid for the Jointer project, paid for the development of code, and planned to launch EDGEX together with JNTR as agreed. But Regev was overcome by greed, attempted to throw up roadblocks to EDGX in violation of his agreements, refused to deliver promised code, and ultimately launched Joiner on his own for his own personal advantage.

45.     Following the launch, Regev claims that Jointer has a market capitalization of $3.5 billion, which Regev has stated will grow significantly in a short period of time. Based on that valuation, Patel's ownership interest is worth in excess of $400 million. Patel's investment is reflected by 194,926 shares of Jointer stock, 157,701,200 JNTR tokens and 1,244,884,807 bonus JNTR tokens. Each coin was originally worth $0.01. Now, each coin is worth 30 cents.  Based on the current valuation of each coin, Patel's JNTR tokens are worth approximately $450 million. Regev's attempt to illegally strip Patel and EDGE of the value of their investment, unless and until Patel and EDGE agree to pay more money and accept Regev's other unilateral demands is a breach of contract, breach of fiduciary duty, and an exercise in hostage-taking.

46.     Regev has refused to treat EDGE and Patel fairly and in accordance with Regev's fiduciary obligations.  Regev has improperly taken the position that Patel has breached ***"the original SAFE . . . and therefore declare[d] [his investment] as invalid."*** And Regev once again attempted to hold Patel and EDGE hostage to paying additional money under the SAFE to ***"restore [EDGE's] right for 15% equity."*** Part of this offer also involved Patel and EDGE giving up their right to a license (that they had already paid for and that was already in effect) and agreeing that there was ***"NO LICENSE whatsoever or any conflict of interst."***

47.     In short, after multiple back and forths with Jointer executives and Regev in an attempt to peaceably resolve these issue, Patel and EDGE filed this lawsuit. Having invested over $1.5 million into Jointer without reaping any of the expectations under their multiple contracts with the company, Patel felt that he had no other choice. Regev has acknowledge that Jointer has not fulfilled its obligations under the contract noting that he has ***"been super clear that we'll give NOTHING if there is no [additional] payment."***

## Count I

### Breach of Contract – SAFE Agreement
### (Against Jointer and Regev)

48.     EDGE and Patel re-allege and incorporate by reference the allegations contained in paragraphs 1 through 44, inclusive, as though fully alleged and set forth herein.

49.     Pursuant to the written SAFE Agreement executed between the parties, EDGE agreed to invest $2,000,000 into Jointer under certain specific obligations. In exchange, and in consideration therefore, EDGE and Patel received equity in the company.

50.     Patel and EDGE fully performed all conditions, covenants, and promises required of it in accordance with the terms and conditions of the SAFE Agreement. To the degree EDGE and/or Patel has not fully performed al conditions, covenants, and promises required of it in accordance with the terms and conditions of the SAFE Agreement, it has been excused from non-performance due to the conduct and non-performance of Jointer. Jointer and Regev breached the SAFE Agreement by denying Patel—the right to a non-voting Board observer position, subject to customary limitations. That right was guaranteed to Patel pursuant to Section 5(c) and was routinely requested by Patel and denied by Regev.

51.     Pursuant to Section 5(c) of the SAFE, if the money paid has "converted into equity of the Company, then [sic] Company *shall* use commercially reasonable efforts to ensure that the definitive documents executed in connection with such conversion provide that . . . (iii) the single largest cash investor in the Company's equity that is not otherwise represented on the Board shall have a right to a non-voting Board observer position, subject to customary limitations." Patel is and remains the "single largest cash investor in the Company's equity," is not represented on the Board, and the money paid under the SAFE has converted into equity. Under the terms of the SAFE, Patel is entitled to a non-voting Board observer position which he has routinely been denied in violation of the contract.

52.     Jointer and Regev have also breached the SAFE by failing to convert it and give Patel and EDGE the equity and bonus JNTR tokens that they are owed. The bonus tokens are

- 15 -

explicitly owed under the SAFE because they were provided to all other investors and team members. Denying Patel and EDGE this investment is an impermissible dilution of their equity stake.

53.     As a direct and proximate result of this breach of contract by Jointer and Regev, EDGE and Patel have been damaged in an amount to be proven at trial. Jointer and Regev's breaches of contract have resulted in substantial additional damages, including lost profits and lost enterprise value.

## Count II

### DECLARATORY JUDGMENT
### (Against Jointer and Regev – 28 U.S.C. §2201)

54.     EDGE and Patel re-allege and incorporate by reference the allegations contained in paragraphs 1 through 44 inclusive, as though fully alleged and set forth herein.

55.     Jointer and Regev cannot establish that EDGE and Patel breached the SAFE agreement. Jointer and Regev claim that Patel must invest an additional $448,000 in Jointer despite clear language in the Addendum providing that the additional investments were optional and would be converted to equity on a pro rata basis. Therefore, Jointer and Regev's threats to *"report a fraud attempt against [Patel] and all other EGDE196 principles with the SEC," "return [Patel's] money and remove [him] as an investor with Jointer,"* and declare the *"EDG196 [sic] license [] invalid and cancel[] [it] completely"* are unfounded and unsupported by the law.

56.     EDGE and Patel are therefore entitled to a declaration that:


EDGE and Patel are not liable to Jointer and/or Regev for any additional payments based on any breach of the SAFE agreement.

EDGE and Patel are therefore entitled to a declaration that:

Jointer and Regev wrongfully cancelled EDGE's License and Addendum and therefore EDGE and Patel are entitled to the work product bargained for and/or the expected lost profits pursuant to the terms of those agreements and applicable law

## Count III

### Breach of Contract – License Agreement
### (Against Jointer and Regev)

57.     EDGE and Patel re-allege and incorporate by reference the allegations contained in paragraphs 1 through 44, as though fully alleged and set forth herein.

58.     Pursuant to the written August 9, 2019 License Agreement executed between the parties, Jointer and Regev would license to EDGE the following items and would provide the following information and services to facilitate a three-token venture capital fund for EDGE: (1) a copy of a Jointer White paper; (2) a copy of a Jointer tokenomics paper; (3) a copy of a jointer auction and IEO paper; (4) a copy of a Jointer technical design paper; (5) a copy of a Jointer SAFT contract; (6) a copy of Legal structure; (7) code ready for the three coins (JNTR, JNTR/x, and JNTR/e); (8) code ready for an Auction page; (9) hosting services on Smart swap; (10) presentations; (11) conversion of Jointer documents to Venture Capital before August 15, 2019, except code integration; (12) Element Zero access to create a stable coin for EDGE called Ecosystem Coin; and (13) any and all documents needed.

59.     In exchange, as a consideration therefore, EDGE and Patel agreed to pay Jointer a cash payment of $100,000, which was due "[u]pon complete transfer of all of the above."

60.     Patel and EDGE fully performed all conditions, covenants, and promises required of it in accordance with the terms and conditions of the License Agreement. To the degree EDGE and/or Patel has not fully performed al conditions, covenants, and promises required of it in accordance with the terms and conditions of the License Agreement, it has been excused from non-performance due to the conduct and non-performance of Jointer.

61.     Jointer and Regev breached the License Agreement by failing to provide EDGE with the materials it was required to furnish under the Agreement, including the code for the three coins (JNTR, JNTR/x, and JNTR/e) as well as the code ready for an auction page among other things.

62.     As a direct and proximate result of this breach of contract by Jointer and Regev,

- 17 -

EDGE and Patel have been damaged in an amount to be proven at trial. Jointer and Regev's breaches of contract have resulted in substantial additional damages, including lost profits and lost enterprise value.

## Count IV

### Breach of Contract – License Addendum
### (Against Jointer and Regev)

63.     EDGE and Patel re-allege and incorporate by reference the allegations contained in paragraphs 1 through 44, as though fully alleged and set forth herein.

64.     Pursuant to the written January 29, 2020 Addendum to the license agreement executed between the parties, Jointer and Regev would make certain "improvements" to their work product, including: (1) providing a solution for Whitelist, which Regev said would take seven days to develop; (2) integrating EDGE 196 wallet to the Jointer system, which Regev said would take ten days to develop; and (3) creating multiple smart contracts between the relevant entities, which Regev said would take fourteen days to develop. The Addendum also promised that the "auction process and multiple smart contract[s] between entities will be live within 3 weeks from the date of the payment of $10,000," which is the amount Regev believed Patel had under-paid on the initial license agreement, plus the payment of the $8,000 in initial development costs.

65.     In exchange, as a consideration therefore, EDGE and Patel agreed to pay Jointer a cash payment of $15,000 and monthly pro rata development fee costs. The Addendum also required Mr. Patel and EDGE to invest the second $1,000,000 in Jointer as outlined in the SAFE in a particular fashion with installment payments throughout early 2020 with the full million to have been paid by May 1, 2020  which was due "[u]pon complete transfer of all of the above." Mr. Patel and EDGE also accepted other limiting requirements that were not present in the initial License as part of the Addendum.

66.     Patel and EDGE fully performed all conditions, covenants, and promises required of it in accordance with the terms and conditions of the Addendum. To the degree EDGE and/or Patel has not fully performed all conditions, covenants, and promises required of it in accordance

- 18 -

with the terms and conditions of the Addendum, it has been excused from non-performance due to the conduct and non-performance of Jointer.

67.     Jointer and Regev breached the Addendum by failing to integrate EDGE196 wallet to the Jointer system. Jointer and Regev also breached an  agreement by failing to integrate EDGEX with Jointer. Jointer and Regev further breached the Addendum by  failing to create multiple smart contracts between the relevant entities as required by the Addendum.

68.     As a direct and proximate result of this breach of contract by Jointer and Regev, EDGE and Patel have been damaged in an amount to be proven at trial. Jointer and Regev's breaches of contract have resulted in substantial additional damages, including lost profits and lost enterprise value.

## Count V

### Breach of Fiduciary Duty
### (Against Jointer, Regev, Rosenblum, and White)

69.     EDGE and Patel re-allege and incorporate by reference the allegations contained in paragraphs 1 through 44, as though fully alleged and set forth herein.

70.     As the founders and executives of Jointer, Regev, Rosenblum, and White owe the shareholders of the company a fiduciary duty.

71.     Regev, Rosenblum, and White had the power to, and in fact have, exercised control over the company's strategic decision making and day-to-day operations. They are part of a small group that make decisions together and have acted to unfairly enrich themselves at the expense of Jointer investors.

72.     First, Jointer's decision to issue a "special" JNTR "bonus" token distribution to certain employees and investors that represented a 760% bonus on the value of the JNTR tokens amounted to a breach of this fiduciary duty. Regev even went so far as to award White bonus tokens based on a completely arbitrary, inflated and unjustified salary of over $1.8 million dollars. On information and belief, this was done to allow a small number of Jointer executives to retain full control over Jointer despite publicly claiming that it is a digital decentralized autonomous

organization or a decentralized finance instrument.

73.     Second, Regev and White's actions of approaching CoinTiger and falsely representing that Jointer was not responsible for the integration of EDGEX also amounts to a breach of the fiduciary duty owned by Jointer and its executives to its investors. This is particularly the case where it was done at an Investor's expense to allow Jointer's staff to focus on the Jointer integration since they did not have the capability to perform both the integrations of JNTR and EDGEX as promised. Jointer's further action known to Rosenblum, Regev, and White of conspiring to remove Mr. Patel from the CoinTiger integration telegram group further illustrates this wrongdoing.

74.     Third, and finally, Mr. White additionally breached his fiduciary duty to Jointer's investors by charging EDGE exorbitant above-market prices to gain extra benefits for Jointer and to obtain kickbacks in exchange for the listing of EDGEX. Mr. White has  been caught lying about the cost to list EDGEX on particular exchanges in an attempt to charge EDGE double fees and essentially force EDGE to pay for Jointer's JNTR listing in an attempt to "piggyback" off of EDGE's capital.

75.     Absent the actions of Jointer, Regev, Rosenblum, and White, EDGE and Jointer would have moved forward with the integrated launch of EDGEX and JNTR on CoinTiger and would have resulted in enormous benefits to both companies and its shareholders, including Patel and EDGE. Also absent these actions, EDGE would not have overpaid for listing on exchanges and would have more control over Jointer. As a result of these actions, EDGE and Patel sustained damages in an amount to be proven at trial.

## **Jury Demand**

76.     Plaintiffs EDGE and Jay Patel demand a trial by jury on all issues.

## Prayer for Relief

77.     WHEREFORE, Plaintiffs EDGE and its founder Jay Patel prays for judgment against Defendants Jointer, Regev, Rosenblum, and White, and each of them, as follows:

A.      For general, special and consequential damages in amounts proved at trial, but not less than $1 billion;

B.      For a declaration that Jointer and Regev are not liable to Jointer and/or Regev based on any breach of the SAFE agreement.

C.      For a declaration that Jointer and Regev wrongfully cancelled EDGE's License and Addendum therefore EDGE and Patel are entitled to the work product bargained for and/or the expected lost profits pursuant to the terms of those agreements and applicable law;

D.      For an order removing Regev as sole director of Jointer;

E.      Awarding punitive damages in an amount to be determined at trial;

F.      Awarding costs, including attorneys' fees, and disbursements in this action;

G.      Awarding prejudgment and post-judgment interest; and

H.      Awarding such additional and further relief as the Court may deem just and proper.

Dated: October 2, 2020                    Respectfully submitted,


                                          */s/ Vineet Bhatia*
                                          Vineet Bhatia
                                          SUSMAN GODFREY L.L.P.
                                          State Bar No. 00795976
                                          S.D. Adm. #20187
                                          1000 Louisiana Street, Suite 5100
                                          Houston, Texas 77002-5096
                                          Telephone: (713) 651-9366
                                          Facsimile: (713) 654-6666
                                          Email: vbhatia@susmangodfrey.com

                                          Attorney-in-Charge for EDGE196, LLC and
                                          Jaikrishna Patel

OF COUNSEL:

Jenna Farleigh
Washington State Bar No. 47392
SUSMAN GODFREY L.L.P.
1201 Third Avenue
Seattle, Washington 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
E-mail: jfarleigh@susmangodfrey.com

7622914v1/016960