IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDGE196, LLC AND JAIKRISHNA PATEL | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | Civil Action No. 4:20-cv-03417 |
| | § | |
| JOINTER, INC., JUDE G. REGEV, | § | |
| DEBBIE ROSENBLUM, AND KYLE WHITE | § | |
| | § | |
| *Defendants.* | § | JURY TRIAL DEMANDED |

**Plaintiffs' Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and, In the Alternative, Partial Motion to Dismiss for Failure to State Claims**

# TABLE OF CONTENTS

SUMMARY ................................................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 3

ARGUMENT ............................................................................................................ 8

    I.    This Court Has Personal Jurisdiction Over All Defendants On All Claims ................ 8

        A.    This Court Has Specific Jurisdiction Over Jointer on the Contract Claims ................................................................................................................. 9

        B.    This Court Has Specific Jurisdiction Over Jointer on the Re-Plead Declaratory Judgment Claim. ...................................................................... 12

        C.    This Court Has Specific Jurisdiction Over Jointer and Regev on the Re-Plead Breach of Fiduciary Duty Claim and the New Fraud-Based Claims. .................................................................................................... 12

        D.    The Exercise of Personal Jurisdiction Over Jointer and Regev Is Not Unreasonable................................................................................................ 13

    II.    The Court Should Deny Defendants' "Partial" Motion to Dismiss for Failure to State A Claim................................................................................................ 16

        A.    Plaintiffs State a Claim Under the Declaratory Judgment Act. ...................... 17

        B.    Plaintiffs State a Claim For Breach of Fiduciary Duty.................................. 17

CONCLUSION........................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alltrade, Inc. v. Uniweld Prod., Inc.*,
　946 F.2d 622 (9th Cir. 1991) ...............................................................16

*Alpine View Co. Ltd. v. Atlas Copco AB*,
　205 F.3d 208 (5th Cir. 2000) .................................................................8

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ........................................................................16, 17

*Bennett v Breuil Petroleum Corp.*,
　99 A.2d 236 (Del. Ch. 1953) .................................................................18

*Burger King Corp. v. Rudzewicz*,
　471 U.S. 462 (1985) ...............................................................................9

*Calder v. Jones*,
　465 U.S. 783 (1984) .............................................................................13

*Central Freight Lines, Inc. v. APA Transport Corp.*,
　322 F.3d 376 (5th Cir. 2003) .................................................................9

*Clemens v. McNamee*,
　615 F.3d 374 (5th Cir. 2010) ...............................................................13

*Dowling v. Narragansett Cap. Corp.*,
　735 F. Supp. 1105 (D.R.I. 1990) ..........................................................18

*Electrosource, Inc. v. Horizon Battery Techs., Ltd.*,
　176 F.3d 867 (5th Cir. 1999) ........................................................8, 9, 10

*Healix Infusion Therapy, Inc. v. Helix Health, LLC*,
　No. CV H-08-0337, 2009 WL 10713112 (S.D. Tex. Nov. 30, 2009) ........................... *passim*

*Jones v. Petty-Ray Geo. et al.*,
　954 F.2d 1061 (5th Cir. 1992) ...............................................................9

*King v. Dogan*,
　31 F.3d 344 (5th Cir. 1994) ...................................................................1

*King v. Douglass*,
　973 F. Supp. 707 (S.D. Tex. 1996) .......................................................18

*Lochhead v. Alcano*,
    697 F. Supp. 406 (D. Utah 1998) ................................................................18

*Lovelace v. Software Spectrum Inc.*,
    78 F.3d 1015 (5th Cir. 1996) .....................................................................16

*Madry v. Fina Oil & Chem. Co.*,
    1994 U.S. App. LEXIS 42717 (5th Cir. Dec. 27, 1994) ...............................17

*Mantissa Corp. v. Ondot Sys., Inc.*,
    267 F. Supp. 3d 918 (S.D. Tex. 2017) .........................................................2

*McMurdy v. Bos. Sci. Corp.*,
    No. 2:19-CV-00301-JRG, 2019 WL 6131296 (E.D. Tex. Nov. 19, 2019).................1

*Pacesetter Systems, Inc. v. Medtronic*,
    678 F.2d 93 (9th Cir. 1982) .......................................................................16

*Pan-Islamic Corp. v. Exxon Corp.*,
    632 F.2d 539, 546 (5th Cir. 1980) .........................................................17, 18

*Polythane Sys., Inc. v. Marina Ventures Intern., Ltd.*,
    993 F.2d 1201 (5th Cir. 1993) ................................................................9, 11

*Probado Techs. Corp. v. Smartnet, Inc.*,
    No. CIVA C-09-349, 2010 WL 918573 (S.D. Tex. Mar. 12, 2010).................1, 12

*Ruston Gas Turbines, Inc. v. Donaldson Co.*,
    9 F.3d 415 (5th Cir. 1993) ..........................................................................8

*In re S. Scrap Material Co., LLC*,
    541 F.3d 584 (5th Cir. 2008) .....................................................................17

*Swanson v. American Cons. Indus.*,
    415 F.2d 1326 (7th Cir. 1969) ...................................................................18

*Transcor Astra Grp. S.A. v. Petroleo Brasileiro, S.A.-Petrobras*,
    No. 4:08-CV-2072, 2010 WL 11530853 (S.D. Tex. Feb. 12, 2010) ......................9

*Wien Air Alaska, Inc. v. Brandt*,
    195 F.3d 208 (5th Cir. 1999) ...............................................................8, 9, 13

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) .................................................................................17

**Statutes**

Uniform Commercial Code § 2-308 ....................................................................10

**Other Authorities**

Rule 12(b)(6)........................................................................................................................16

**SUMMARY**

Plaintiffs Edge196, LLC ("EDGE") and Jaikrishna ("Jay") Patel respectfully submit this opposition to Defendants' Jointer, Inc. and its founder, Jude Regev's, Motion to Dismiss for Lack of Personal Jurisdiction, and, In the Alternative, Partial Motion to Dismiss for Failure to State Claims. Dkt. No. 21. Defendants' motion should be denied as moot since it was directed at the original complaint, which has now been replaced by Plaintiffs' First Amended Complaint ("FAC"). *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.").

The FAC makes several material changes: (1) it removes Regev from the breach-of-contract claims and the related declaratory judgment claim; (2) it adds additional jurisdictional facts to the declaratory judgment claim; (3) it substantially recasts the breach-of-fiduciary duty claim against both Jointer and Regev; and (4) it adds two entirely new fraud-based causes of action against both Jointer and Regev. These changes alter the complaint's substance and eliminate many of the arguments made by Defendants in the pending motion. Because the amended pleading renders the original complaint and the motion to dismiss it a "legal nullity," the motion should be denied as moot. *McMurdy v. Bos. Sci. Corp.*, No. 2:19-CV-00301-JRG, 2019 WL 6131296, at *1 (E.D. Tex. Nov. 19, 2019); *Probado Techs. Corp. v. Smartnet, Inc.*, No. CIVA C-09-349, 2010 WL 918573, at *1 (S.D. Tex. Mar. 12, 2010) ("If an amended complaint does not incorporate the earlier pleading, a court may deny as moot a motion to dismiss that was filed before the operative amended complaint."). But in the event the Court decides to reach the merits of Defendants' motion, the motion should be denied.

First, Defendants' kitchen-sink attack on personal jurisdiction misstates both the law and the facts. This lawsuit is a dispute between business entities and their respective founders relating to various contracts that were negotiated by parties in Texas and were to be performed in Texas, with delivery being perfected there. The intent of these contracts was clear: to form a long-term

"sister" relationship between the companies wherein Jointer and Regev would get money and EDGE and Patel would get technical expertise and product for the co-launch of its own three-token crypto offering. As a result of the breach of these contracts, Plaintiffs suffered consequences in Texas. This is sufficient to confer jurisdiction over Jointer on the breach-of-contract claims.

As noted above, with respect to the declaratory judgment claim, that claim has been substantially amended. It is now brought against Jointer alone and includes additional jurisdictional facts. Defendants' argument that the claim—which Defendants concede relates to and therefore rises and falls jurisdictionally with the claim for breach of the Simple Agreement for Future Equity ("the SAFE"), Dkt. 21 at 12-13—does not contain sufficient jurisdictional facts is moot. Since jurisdiction exists on the contract claim, it exists for the declaratory judgment claim.

The remaining claim attacked by the motion to dismiss for lack of personal jurisdiction— the breach of fiduciary duty claim—has also been materially revised in the FAC. That new complaint makes clear that the distribution of "bonus tokens" to Jointer employees and investors while denying those same rights to Patel absent wavier of material, unrelated legal claims amounts to a unique dilution of his ownership in the company and results in the breach of a fiduciary duty by both Regev and Jointer. Notably, this breach of fiduciary duty claim is also linked factually to the new fraud-based claims that contend that Regev made material misrepresentations to Patel that fraudulently induced him to enter into the various agreements at issue and concealed Regev's intent to deprive Patel of his rights under the SAFE while simultaneously extracting more money from him. Several of these misrepresentations were made in Texas, establishing the basis for personal jurisdiction over Jointer and Regev on these claims.

Defendants' alternate argument that "[e]ven if 'minimum contacts' . . . [are] established," personal jurisdiction still lacks over them because exercising it is "unreasonable" and does not comport with "traditional notices of fair play and substantial justice" also fails. Dkt. 21, pp. 20-21. Notably, Defendants did not raise an objection to venue in the Southern District of Texas in its motion to dismiss and has waived an improper venue defense. *Mantissa Corp. v. Ondot Sys., Inc*., 267 F. Supp. 3d 918, 923 (S.D. Tex. 2017). Defendants also fail to explain the burden of litigating

in Texas and have not made a compelling case for why the exercise of jurisdiction there would be unconstitutional. Defendants, having done the following, cannot now claim that Texas jurisdiction is unfair: (1) entered into a long-term relationship with Texas residents, (2) negotiated and executed several agreements with product to be delivered to Texas, (3) visited Texas several times to discuss and perform work on the contracts, (4) caused harm in Texas following the breach of those contracts, and (5) assented to mediation in Texas.

Second, Defendants' "partial" motion to dismiss is also deficient. Defendants' attack on the Declaratory Judgment Act claim does not even assert a deficiency in pleading but instead relies on inapposite case law to argue that the Court should exercise "discretion" to knock out the claim in this early stage. Such a stretch of precedent should not be embraced. Defendants' also misstate the crux of Plaintiffs' breach-of-fiduciary duty claim. As clarified, the claim is ripe given Patel's existing right to a conversion to preferred shares under the SAFE. Defendants further misstate the law in claiming that the breach-of-fiduciary-duty claim cannot be brought as a direct action. Because Patel was uniquely treated and disproportionately harmed by Jointer and Regev's issuance of "bonus tokens" (and its concomitant refusal to issue those tokens to Patel absent conditions that only materially affected him), a direct action is appropriate.

## STATEMENT OF FACTS

This is a business dispute between two different business entities—Jointer Inc. and Texas-based EDGE—and their respective founders—Regev and Texas-resident Patel. The mission of these two companies is described at length in the FAC. *See* Patel Decl., Ex. H.

Patel and Regev first met in February 2018, just before EDGE's global team of experts announced that Jointer was among the twenty finalists in the Global Startup Challenge. Patel Decl. ¶¶ 6, 8. The meeting, which occurred at the Veggie Garden restraint in Mountain View, CA, was introductory. *Id.* ¶ 8. During it, Regev repeatedly sought affirmation that he and Jointer would win the competition—affirmation Patel declined to provide. *Id.* Regev also made repeated

representations that Jointer would be "bigger than Uber," that it would have a "trillion dollar market value," and that Jointer would be the "number 1 business in the world." *Id.* Regev also repeatedly stated that Jointer would be launched by early summer 2018. *Id.* Although Regev states in his declaration that there was a specific discussion of a SAFE, Dkt. 21-1, ¶ 7, that is untrue, Patel Decl. ¶ 28. Jointer had not even been announced as a finalist in the competition and so any investment in them would have been premature and a potential conflict. *Id.*

By mid-March 2018, Regev and Patel both understood that Jointer would be declared the winner of the competition. *Id.* ¶ 9. It was at that point that Patel expressed interest in investing an additional $1,000,000 (beyond the winnings from the competition) in Jointer. *Id.* That additional investment would be paid after the original prize money from the competition was spent. *Id.* After an initial agreement with Regev was reached, EDGE's Houston-based attorney began communicating back and forth with Regev regarding the investment in Jointer. *Id.* To commemorate this agreement, the parties entered into the SAFE on March 16, 2018. *Id.* ¶ 10, Ex. A. Under that agreement, Mr. Patel agreed to invest a total of $2,000,000 into Jointer. *Id.* ¶ 11 & Ex. A. The SAFE, which contemplated a long-term financing arrangement between the parties, was executed between Patel personally as the "Holder" and Jointer. *Id.* It was signed by Regev in his capacity as Jointer's CEO. *Id.* It also listed a Dickinson, Texas address for Patel. *Id.* The SAFE has a face value of $2,000,000, which includes the prize money won in the Global Startup Competition. *See id.* It therefore cannot be the case—as Regev claims in his declaration—that the SAFE was negotiated as early as February 2018, Dkt. 21-1, ¶ 7, since it was not clear at that time that Jointer would win the competition. After the SAFE was executed, Patel paid the first tranche of funds totaling $100,000 via wire to Jointer on April 2, 2018. Patel Decl. ¶ 11.

Regev and Patel's second in-person meeting was in April 2018 when Patel traveled to San Francisco, California to attend the LendIt Fintech Summit. *Id.* ¶ 12. Since EDGE was a partner in the event, Patel pulled some strings and managed to get Regev registered for the summit even though it was already full. *Id.* He also managed to get Jointer a presentation spot on stage, where Regev was given a check. *Id.* Specifically, Regev was provided a $900,000 check constituting the

remainder of the winnings from the competition. *Id.* That check was Bank of America Check No. 104 dated April 10, 2018. *Id.* Jointer deposited that check on the same date. *Id.*

Although Patel was not in California exclusively to meet with Regev and Jointer, he was invited to a dinner by Regev that included a few of the other Jointer investors. *Id.* ¶ 13. That dinner lasted an hour or two and was also at Veggie Garden in Mountain View. *Id.* It was not a formal investor meeting and was more a "meet and greet" to allow Patel to acquaint himself with the other Jointer investors. *Id.* This is one of the two in-person meetings that Patel had with Jointer in California—meetings referred to as "investor meetings" in Regev's declaration. Dkt. 21-1, ¶ 8.

In late-April 2018, Patel and Regev attended the Global Startup Competition ceremony in India, where Patel presented Jointer a second $1 million stage check. Dkt. 21 at, Ex.1-B; Patel Decl. ¶ 14. Following that event, Patel ***also gave*** Jointer additional funding under the SAFE. Patel Decl. ¶ 14. Bank of America check 106 in the amount of $1,000,000 was given to Regev in New Delhi around April 20, 2018. *Id.* Although Defendants claim that the "$1 million check was deposited in a California bank, but was returned insufficient," Dkt. 21 at 5 n.4, that isn't the full story. Regev did not ***attempt*** to cash that check until November 10, 2020—more than a month after this lawsuit was filed. Patel Decl. *Id.* ¶ 14, Ex. C. Although the check was proffered in 2018, it appears that Regev either wrote in or changed the date on that check, post-dating it to 2020. *Id.* The attempt to cash the check caused Patel's account to overdraw and Patel froze that check. *Id.* It is believed that Regev attempted to cash that check and then "reported the issue to the local district attorney" in order to obtain leverage in this litigation. *Id.*

In 2019, Patel began getting concerned about Jointer's lack of progress despite repeated assurances from Regev that Jointer's launch was imminent and that the technology was "ready to go." *Id.* ¶ 16. Around that same time, EDGE began working on a two-token model venture capital fund and openly discussed that concept with Regev. *Id.* ¶ 17. Regev told Patel that he believed a three-token model would work better for EDGE and volunteered to build the three-token model and license it back to EDGE. Regev promised that it would be ready by September 30, 2019. *Id.*

On August 9, 2019, Edge and Patel entered into a License Agreement with Jointer that was signed by Regev. *Id.* ¶ 18, Ex. D. That License Agreement was revised on August 12, 2019. *Id.,* Ex. E. The License Agreements promised delivery of: (1) a copy of a Jointer White paper; (2) a copy of a Jointer tokenomics paper; (3) a copy of a jointer auction and IEO paper; (4) a copy of a Jointer technical design paper; (5) a copy of a Jointer SAFT contract; (6) a copy of Legal structure; (7) code ready for the three coins (JNTR, JNTR/x, and JNTR/e); (8) code ready for an Auction page; (9) hosting services on Smart swap; (10) presentations; (11) conversion of Jointer documents to Venture Capital before August 15, 2019, except code integration; (12) Element Zero access to create a stable coin for EDGE called Ecosystem Coin; and (13) any and all documents needed. *Id.* In exchange for this license and services, Patel agreed to pay $5,000 upfront to "cover the marketing docs support" and a cash payment of $100,000, which was due "[u]pon complete transfer of all of the above." *Id.*, Ex. D. Patel paid the $100,000 in full over a period of time— fulfilling his obligation under the License, despite the fact that Jointer never completed the transfer of all items (1-13) set forth above.

By October, Regev had still not delivered under the license and Patel was concerned that the work was not being completed. *Id.* ¶ 19. Regev personally volunteered to travel to Texas specifically to meet with Patel. *Id.* Patel picked Regev up at the airport. *Id.* They had two meetings in which Regev provided specific reasons why the project had been delayed. *Id.* Regev also promised to deliver the required material to EDGE in Texas so that the token could be launched by November 2019 together with the Jointer token system. *Id.* Regev also promised not to launch JNTR before EDGE's offering. *Id.*

By 2020, still desiring the promised material under the License, Patel and EDGE insisted that Jointer perform its obligations. *Id.* ¶ 20. In response, Regev requested an Addendum to the License from Patel. That Addendum was entered into on January 29, 2020. *Id.*, Ex. F. It specified existing and additional technology owed by Jointer and Regev to EDGE and Patel in exchange for additional money. *Id.* In connection, Regev promised a launch in April 2020. *Id.*

Specifically, that Addendum required Patel to pay an additional $15,000 to complete the original work and also make certain "Improvements," including (1) providing a solution for Whitelist, which Regev said would take seven days to develop; (2) integrating EDGE wallet to the Jointer system, which Regev said would take ten days to develop; and (3) creating multiple smart contracts between the relevant entities, which Regev said would take fourteen days to develop. *Id.* ¶ 21. The Addendum also contemplated that any dispute regarding the License or Addendum would first be mediated in Houston under Texas law. *Id.*

In early February 2020, Regev again traveled to Texas to work on the contract. *Id.* ¶ 22. Regev had multiple meetings with EDGE and its partners. *Id.* During one of those meetings, the parties meet with Entoro—a broker dealer that would assist both Jointer and EDGE with their token offerings. *Id.* At that meeting, Regev again promised that EDGE and Jointer would launch together. *Id.* The target date promised by Regev at that meeting was on April 6, 2020—a date that would avoid both April Fools' Day and Regev's birthday. *Id.*

Despite Regev's assurances, Jointer never fulfilled its obligations under the License and Addendum. *Id.* ¶ 23. Regev instead launched Jointer without EDGE's associated platform in fall 2020. *Id.* ¶ 24. Regev also announced that it would be engaging in a "special" JNTR "bonus" token distribution scheme under the guise of providing additional token to Jointer investors. *Id.* In reality, the "bonus" tokens were nothing more than a rouse to provide Jointer (ultimately, Regev) with over 8.6 billion tokens and force unreasonable restrictions and demands upon Patel. *Id.* On information and belief, this bonus was based on an inflated, false valuation and amounted to a breach of fiduciary duty. *Id.* Patel was uniquely affected by this scheme. *Id.* Patel seeks redress for the breaches of contract, fiduciary duty, and fraud propagated by Jointer and Regev—who at all times has served as Jointer's primary representative. *Id.* ¶ 7.

Beyond the dinner attended by Patel in April 2018, Patel has attended one other dinner in person (although only for 15 minutes before rushing to the airport) with Jointer individuals. *Id.* He did not specifically travel out for that dinner meeting, which occurred in Mountain View in mid-2019. *Id.* Any other meetings Patel attended were brief investor calls. *Id.*

## ARGUMENT

### I.    This Court Has Personal Jurisdiction Over All Defendants On All Claims

Under the Due Process Clause, the exercise of personal jurisdiction over a nonresident defendant is proper when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).[1] Jurisdiction can be either general or specific. *Healix Infusion Therapy, Inc. v. Helix Health, LLC*, No. CV H-08-0337, 2009 WL 10713112, at *3 (S.D. Tex. Nov. 30, 2009). "General jurisdiction is based on contacts that are unrelated to the specific controversy and when a defendant maintains 'continuous and systematic' contacts with the forum." *Id.* Specific jurisdiction exits "when a defendant's contacts with the forum state arise out of or are related to the controversy." *Id.*

To establish specific jurisdiction, Plaintiffs must show that "(1) the defendants have minimum contacts with Texas and (2) its causes of action arise out of or result from the defendant's respective contracts." *Id.* Minimum contacts exist over a nonresident defendant if the defendant has "purposefully directed" his activities at residents of the forum. *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (quoted sources omitted). The "contacts with the forum State must be such that it is foreseeable that the defendant should reasonably anticipate being haled into court there." *Id.* A "single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis,* 252 F.3d at 352; *see also Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993) (a state exercise specific jurisdiction when a lawsuit "arises from or relates to the defendant's contact with the forum state"). "If facts are disputed," [Plaintiffs are] entitled to have the conflicts resolved in [their] favor." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999).

---

[1] Texas' long-arm statute extends to the limits of due process. *Electrosource, Inc.*, 176 F.3d 867 at 871. The Court need only address whether subjecting Defendants to suit in Texas would offend the Due Process Clause. *Id.*

Once a plaintiff has established minimum contacts, the burden shifts and defendants' must show that the assertion of jurisdiction over them would be unfair. *Id.*; *Jones v. Petty-Ray Geo. et al.*, 954 F.2d 1061, 1068 (5th Cir. 1992) (defendant's burden is to show a "compelling case").

### A.    This Court Has Specific Jurisdiction Over Jointer on the Contract Claims

Defendants admit that the key claims in this case are "contract claims," but dispute that the three contracts at issue confer personal jurisdiction on Jointer. Dkt. 21 at 3 ("Plaintiffs' claims are essentially contract claims."). Specifically, Jointer wrongly contends that the contracts were drafted and breached in California and that, accordingly, Jointer has no minimum contacts with Texas. But that self-serving view betrays both the true facts as well as the governing law.

It is well-settled that jurisdiction in a contract dispute is appropriate where the dispute grew out of "a contract which had a ***substantial connection*** with that State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985) (quoted source omitted) (emphasis in original). Specifically, where "the nonresident's contacts with the forum were instrumental in the formation of the contract, or the alleged breach," jurisdiction exists. *Transcor Astra Grp. S.A. v. Petroleo Brasileiro, S.A.-Petrobras*, No. 4:08-CV-2072, 2010 WL 11530853, at *16 (S.D. Tex. Feb. 12, 2010). Jurisdiction is also appropriate where the parties' contracts contemplated future consequences in, or a continuing relationship with, the forum state. *Electrosource, Inc.*, 176 F.3d at 872; *see also Central Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376 (5th Cir. 2003) (noting that the exercise of personal jurisdiction is appropriate where contract created a "long-term" relationship with the forum state). If the place where the contract is to be performed is also in the forum state, that is a "'weighty consideration' in ascertaining" jurisdiction. *Polythane Sys., Inc. v. Marina Ventures Intern., Ltd.*, 993 F.2d 1201, 1205 (5th Cir. 1993).

All of these factors weigh in favor of exercising jurisdiction over Jointer on the three contract claims. Defendants are incorrect in asserting that the formation of the contracts and the alleged breached of them "occurred [exclusively] in California." Dkt. 21. The reality is that the relationship between the parties was much more enmeshed, leading Regev to recently refer to

EDGE as Jointer's "sister company." Patel Decl. ¶ 26, Ex. G. A look at all three of the contracts at issue demonstrates that minimum Texas contacts exists for each.

The SAFE[2] at issue in Count I was negotiated between Jointer and Patel's Houston-based attorney over several weeks in late-February to mid-March 2018. Patel Decl. ¶ 9. It explicitly names Patel as the "Holder" and provides a Dickinson, Texas address for him. *Id.*, Ex. A. The SAFE also states that it is "issued as part of a series of Simple Agreements for Future Equity and Amended and Restated Simple Agreements for Future Equity." *Id.* And, given this long-term relationship envisioned between the parties, it further directs that the "Company shall maintain a ledger of all holders." *Id.* Following through with this vision of a long-term relationship, the parties later signed an Addendum to the SAFE. *Id.*, Ex. B. All of the payments made to Jointer as part of this agreement were paid out of Patel's Texas-based Bank of America Account on checks listing his Dickinson, Texas address. *See, e.g.*, *Id.* Ex. C. The "long-term" relationship with a Texas-based enterprise forged by this contract is precisely the type of "substantial connection" that satisfies the minimum contact requirement. *See, e.g.*, *Electrosource, Inc.*, 176 F.3d at 872.

The License Agreement between the parties at issue in Count III likewise was negotiated over time between Jointer and Houston-based EDGE. In fact, there are two copies of the license agreement—one signed on August 9, 2019 and another modified version signed on August 12, 2019. Patel Decl., Exs. D & E. Although both versions of the license agreement are bare bones, they equally envision delivery of product to EDGE, which is located in Texas. *See, e.g.*, Uniform Commercial Code § 2-308 (noting that the default location of delivery of goods is also the place of the purchaser's business or residence). Specifically, the License promised delivery of: (1) a copy of a Jointer White paper; (2) a copy of a Jointer tokenomics paper; (3) a copy of a jointer auction and IEO paper; (4) a copy of a Jointer technical design paper; (5) a copy of a Jointer SAFT contract; (6) a copy of Legal structure; (7) code ready for the three coins (JNTR, JNTR/x, and JNTR/e); (8) code ready for an Auction page; (9) hosting services on Smart swap; (10)

---

[2] Although Jointer is correct that the SAFE Agreement contained a Delaware choice-of-law provision, they concede that fact is not dispositive of the jurisdictional analysis. Dkt. 21 at 8.

presentations; (11) conversion of Jointer documents to Venture Capital before August 15, 2019, except code integration; (12) Element Zero access to create a stable coin for EDGE called Ecosystem Coin; and (13) any and all documents needed. In exchange for this license and services, Patel agreed to pay $5,000 upfront to "cover the marketing docs support" and a cash payment of $100,000, which was due "[u]pon *complete transfer of all of the above*." Patel Decl. Ex. D. Jointer's assertion that all of the "performance obligations from Jointer [on these contracts] relate to various software development and integration of that software completed by Jointer in California" is wrong. Dkt. 21, p. 8. *Delivery* of the promised materials in Texas is part of that contract; in fact, it is Jointer's failure to deliver that material that Jointer acknowledges gave rise to the breach-of-contract claim. *See* Dkt. 21, p. 9 (noting that the Complaint alleges that Jointer failed to deliver "code for the three coins" and "failed to integrate EDGEX with Jointer"); *see also Polyphone Sys., Inc.*, 993 F.2d at 1205 (noting that place of performance, which would include place of delivery, is a key consideration).

The same is true for the Addendum to the License Agreement signed on January 29, 2020, that is addressed in Count IV. Patel Decl., Ex. F. That Addendum further specified existing and additional technology owed by Jointer and Regev to EDGE and Patel in exchange for additional money and terms. *Id.* Specifically, that Addendum required Patel to pay an additional $15,000 to complete the original work and also make certain "Improvements," including (1) providing a solution for Whitelist, which Regev said would take seven days to develop; (2) integrating EDGE wallet to the Jointer system, which Regev said would take ten days to develop; and (3) creating multiple smart contracts between the relevant entities. *Id.* The Addendum further noted that the "auction process and multiple smart contract[s] between entities will be live within 3 weeks from the date of the payment of $10,000." *Id.* As with the original License Agreements, the delivery of the additional materials was envisioned to be in Texas. *Id.* As with the SAFE, the Addendum also envisioned a long-term relationship in the form of both a license that would "continue in perpetuity" as well as a continuing development relationship (Section 3) and investment commitment from Plaintiffs (Section 8). *Id.*

11

Perhaps most telling, is that the Addendum contains a "dispute resolution" provision that states that "[a]nay dispute will be settled by mediation in Houston, Texas" and that the mediator "shall apply Texas law." *Id.* By agreeing to this provision, Defendants clearly acknowledged that it had sufficient minimum contacts that could result in them being haled into litigation in Texas.

Defendants attempts to explain away this provision through a "waiver" argument should be ignored. In light of the COVID-19 pandemic, the parties agreed to participate in a Zoom mediation on November 6, 2020 with all parties attending from their respective locales. Plaintiffs attended from Texas. In light of the remote nature of the proceeding, Plaintiffs agreed to Defendants' choice of a California-based mediator. The assertion that this collegiality under unprecedented circumstances somehow resulted in waiver is the ultimate litigation "gotcha." In any event, it does nothing to undercut the fact that Defendants were aware that their contacts with Texas under the contracts could result in litigation in Texas stemming from the contracts' breach.

**B.     This Court Has Specific Jurisdiction Over Jointer on the Re-Plead Declaratory Judgment Claim.**

The FAC substantially changed the Declaratory Judgment claim. *See* Patel Decl. Ex. F. It is now brought against Jointer alone and includes additional jurisdictional facts. *Id.* Accordingly, Defendants' argument that the claim does not contain sufficient jurisdictional facts should be dismissed as moot. *Probado*, No. CIVA C-09-349, 2010 WL 918573, at *1. However, Defendants' attack on the jurisdictional basis of this claim fails for a second specific reason. Defendants' contend that the Declaratory Judgment claim rises or falls with the claim for breach of the SAFE. *See* Dkt. 21, p. 12 (calling the declaratory judgment claim a "repackaged" breach of contract claim). Because specific jurisdiction exists over Jointer on the contract claim, it exists over the declaratory judgment claim for the same reasons stated above.

**C.     This Court Has Specific Jurisdiction Over Jointer and Regev on the Re-Plead Breach of Fiduciary Duty Claim and the New Fraud-Based Claims.**

The remaining claim attacked by the motion to dismiss—the breach of fiduciary duty claim—has also been materially revised in the FAC. *See* Patel Decl. Ex. F.  That new complaint

makes clear that Regev's personal decision to have Jointer distribute "bonus tokens" to Jointer employees and investors while denying those same rights to Patel absent wavier of unrelated legal claims amounts to dilution of his ownership in the company and results in the breach of a fiduciary duty by both Regev and Jointer. *Id.* The decision by Regev and Jointer to violate a fiduciary duty owed to EDGE and Patel also caused ripple effects in Texas, diluting the value of interests owed to an investor located in that state. *Wien Air Alaska, Inc.*, 195 F.3d at 212 (noting that although not independently dispositive, the foreseeable effects of a tort "are to be assessed as part of the analysis of the defendant's relevant contacts with the forum").

The breach-of-fiduciary duty claim is also linked factually to the new fraud-based claims that specifically contend that Regev made material misrepresentations to Patel and EDGE that fraudulently induced Plaintiffs to enter into the various agreements at issue. *See* Patel Decl. Ex. F. Many of these misrepresentations were made by Regev in Texas, establishing the basis for personal jurisdiction over Jointer and Regev on these claims. *Id.*; *see also Walden*, 571 U.S. at 283–84, 286 ("A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum.").

All of the wrongdoing asserted was directed towards EDGE and Patel in Texas and gave rise to the causes of action alleged. Accordingly, jurisdiction is proper. *Wien Air Alaska, Inc.*, 195 F.3d 208 at 212 (finding specific jurisdiction over fraud and breach-of-fiduciary duty claims on appeal under similar circumstances).[3]

**D.      The Exercise of Personal Jurisdiction Over Jointer and Regev Is Not Unreasonable.**

Defendants next incorrectly contend that the existence of specific jurisdiction is ***still*** insufficient to allow the Court to exercise jurisdiction over them on the grounds that the exercise of such jurisdiction over them would violate "traditional notions of fair play and substantial justice." Dkt. 21, p. 13. This is Defendants' burden to prove. *Healix*, 2009 WL 10713112, at *9.

---

[3] Defendants' reliance on *Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010), is also misplaced. Dkt. 21, p. 12; *see, e.g.*, *Calder v. Jones*, 465 U.S. 783 (1984)).

And the bar is high, requiring Defendants to make a "compelling case" that the exercise of jurisdiction over them "would be unfair and unreasonable." *Id.* They fall short.

To determine whether it would be fair or reasonable to exercise jurisdiction over Defendants, the court examines the following factors: "(1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies." *Id.* "However, [as here], once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." *Id.* Defendants, who dedicate only a single paragraph to addressing this analysis, have not made a compelling case that the exercise of jurisdiction in Texas would be unfair or unreasonable. *See* Dkt. 21, pp. 13-14.

First, Defendants have insinuated that resolving this case in Texas would impose financial hardship because "Jointer is a start-up with limited funds based in California." *Id.* at 13. But, just as in *Healix*, that argument should be rejected since Jointer and Regev have "not explained the extent of that hardship." 2009 WL 10713112, at *10. The facts additionally belie this argument since Regev **admits** that he **already** made two trips to Texas (and one to India) in connection with the agreements that gave rise to this litigation. Dkt. 21-1, ¶¶ 7, 10. In fact, the Complaint **alleges** that Regev was recklessly investing and spending money—including the money provided by Patel—by "travel[ing] to conferences, stay[ing] at fancy hotels, and [] pay[ing] media companies for work that was never delivered." Dkt. 1, ¶ 22. Defendants cannot spend on trips they want but then cry financial hardship when those trips result in litigation.

Second, Defendants suggest (without stating) that Texas has no interst in serving as the forum for this lawsuit since "virtually all individual witnesses, other than Patel, are based in California or in forums other than Texas." Dkt. 21 at 14. That is incorrect. Because EDGE is a single-member LLC (one that is 100% owned by Texas-resident Jay Patel) and is headquartered in Sugar Land, Texas, the state of Texas certainly "ha[s] an interst in litigating [these] claim[s] . . . in this forum." *Healix*, 2009 WL 10713112, at *10 (concluding that Texas had an interst in

litigating cases involving a Texas corporation). In addition, this relatively compact case is not expected to require many witnesses and the additional EDGE witnesses—to the degree any are needed—are based in Texas. The location of the "investors" in Jointer—who are not likely to be witnesses—is of little relevance to the jurisdictional inquiry.

Third, Defendants ignore that EDGE and Patel have a clear interest in obtaining timely relief on the efficient schedule already envisioned by this forum. Dkt. 24. Having been denied the materials promised by Jointer, EDGE and Patel have had to pivot to obtain additional help to get their own token system launched. This has cost EDGE and Patel large sums of money and time. Timely relief could help ameliorate some of these ongoing losses. Forcing EDGE and Patel to refile this lawsuit in California would not only inefficiently undercut that interest but would force the parties to redo some of the discovery that has already been completed.

Fourth, Defendants suggest that Texas is an inefficient forum in which to resolve these claims and that California—that Defendants claim "has an interest in developing its laws relating to start-ups and their investors," Dkt. 21, p. 14—shares an interst in the resolution of this case. But that is an overstatement. Defendants acknowledge that "Plaintiffs' claims are essentially contract claims," Dkt. 21, p. 3, contradicting any credible argument that the claims in the Original Complaint would result in legal developments that would apply more broadly to the investor space.

Defendants' further conflate the efficiency interests of the interstate judicial system with its own. For example, although courts consider whether the Defendants would be substantially burdened by having to try the case in Texas, they do not compare the relative burden imposed on Plaintiffs versus Defendants. *Healix*, 2009 WL 10713112, at *9. Stated differently, the fact that Defendants may ***prefer*** to litigate the case in California or that Plaintiffs have more resources to absorb the costs of litigating in a far-flung jurisdiction is of no relevance. Even so, Defendants have not even established that it would in fact be easier for EDGE and Patel to try this case in California than for Jointer and Regev to try this case in Texas. Defendants have conceded that Regev made approximately the same number of trips Texas that Patel made to California in the same period. *See also* Dkt. 21-1, ¶¶ 7, 8.

Finally, this Court should likewise ignore Defendants' theoretical claims that efficiencies could be captured by trying this case in California since "a dispute already exists regarding the second $1 million check to Jointer that was returned for insufficient funds and that has been reported to a district attorney in California." Dkt. 21, p. 14. As noted above, Regev admits that he received that $1 million check "at a second conference, in India," Dkt. 21-1, ¶ 7. But misleadingly leaves out that that conference was in April 2018. *Id.* (suspiciously noting only that this check was received "[l]ater"). He further omits that he did not even attempt to ***cash*** that check until November 2020—well after this lawsuit was filed. Patel Decl., Ex. C. Defendants cannot manufacture a basis on which to attack personal jurisdiction only after being faced with a lawsuit. Allowing such behavior would end-run personal jurisdiction jurisprudence. The fact that Jointer claims that it "intends to file a civil lawsuit against Patel for his dept obligations, which will result in two parallel proceedings in two different States" also carries little water. Dkt. 21, p. 14. Jointer has not yet filed any action and, if it did, Plaintiffs would file a motion to dismiss, stay, or transfer that lawsuit under the first-to-file rule of federal comity that applies when an action is commenced and there is already another case pending presenting similar issues between the same parties. *Pacesetter Systems, Inc. v. Medtronic*, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982); *Alltrade, Inc. v. Uniweld Prod., Inc*., 946 F.2d 622, 623 (9th Cir. 1991).

Contrary to Defendants' position, all factors cut in favor of exercising jurisdiction and Defendants have not shown that subjecting them to jurisdiction would be unfair or unreasonable.

## II.     <u>The Court Should Deny Defendants' "Partial" Motion to Dismiss for Failure to State A Claim.</u>

A Rule 12(b)(6) motion to dismiss should be granted only if the defendant is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When evaluating a motion to dismiss for failure to state a claim, the court "must limit [its] inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint . . . [and] matters of which [it] may take judicial notice." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996). The Court

must accept all of the plaintiff's factual allegations as true and view them in the light most favorable to the plaintiff. *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008). Here, Defendants only level "failure to state a claim" attacks on the breach-of-fiduciary duty claim and the declaratory judgment claim as plead in the Original Complaint, referring to their motion as a "partial" motion to dismiss Both claims have been substantially revised, mooting Defendants' attacks. To the degree the arguments raised by Defendants are still in play, they should be rejected.

## A. Plaintiffs State a Claim Under the Declaratory Judgment Act.

Defendants' seek dismissal on Plaintiffs' Declaratory Judgment Act claim not because the claim is legally deficient; instead, Defendants merely ***request*** that the Court dismiss the claim on a discretionary basis as duplicative. Dkt. 21, p. 16; *Wilton v. Seven Falls Co*., 515 U.S. 277, 282 (1995) (noting that a district court has "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites"). That is not a proper use of the 12(b)(6) vehicle, which only allows for dismissal if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570.

In fact, the ***only*** cases cited by Defendants are inapposite. The first, *Madry v. Fina Oil & Chem. Co*., addressed claims that persevered well beyond the motion-to-dismiss phase of proceedings. 1994 U.S. App. LEXIS 42717 at *5 (5th Cir. Dec. 27, 1994) (invalidating a judgment**)**. The second, *Pan-Islamic Corp. v. Exxon Corp*.—a case that has since been abrogated— affirmed the denial of a motion for leave to amend based on standing issues and has nothing to do with a failure to state a declaratory claim. 632 F.2d 539, 546 (5th Cir. 1980) (affirming refusal to allow leave to add claims adequately raised in the original complaint). Because Defendants have articulated no legitimate basis to obtain dismissal of this claim, their request should be denied.

## B. Plaintiffs State a Claim For Breach of Fiduciary Duty.

Defendants' seek dismissal of the breach-of-fiduciary duty claim because the SAFE uses discretionary language and that no Jointer equity has issued. Dkt. 21 at 14. But that is an

oversimplification of the claim. In the case of ***this*** SAFE, Patel was given the right to exercise an optional conversion under § 3(a)(iii). Patel is entitled to Series Seed Preferred Stock. Defendants are wrong that "Plaintiffs have not alleged any … steps to conversion." Dkt. 21, p. 15. Defendants also misstate the law in claiming that "[u]nder Delaware law a claim for breach of fiduciary duty can only be brought as a derivative lawsuit by a shareholder." *Id.* As with the declaratory claim, this attack is a challenge to "standing" that has wrongfully been repackaged. *King v. Douglass*, 973 F. Supp. 707, 716 (S.D. Tex. 1996) (referring to this as "the standing issue"). But even assuming *arguendo* that the motion is valid and Delaware law applies, Defendants still get it wrong. Delaware law states that "[t]o sue directly, a plaintiff must allege either an injury separate and distinct from that to other shareholders or a wrong involving a contractual right of the stockholders, such as the right to vote, that exists independently of any right of the corporation." *King*, 973 F. Supp. at 716 & 723-24 (citations omitted). And "[a] claim of stock dilution and a corresponding reduction in a stockholder's voting power is an individual claim." *Id.*

Plaintiffs assert that although all shareholders were affected by Jointer's issuance of "bonus tokens," only Patel had to give up meaningful rights to obtain those "tokens" and Regev's refusal to issue them without Patel acceding to those conditions diluted Patel's ownership interest in a unique manner. In fact, to date, only Patel has been deprived the bonus tokens at all. Patel's ownership interst was therefore uniquely diluted in a manner sufficient to make out a direct claim. *See, e.g.*, *Lochhead v. Alcano*, 697 F. Supp. 406, 411-13 (D. Utah 1998); *Swanson v. American Cons. Indus.*, 415 F.2d 1326 (7th Cir. 1969); *Bennett v Breuil Petroleum Corp.*, 99 A.2d 236, 240-41 (Del. Ch. 1953). He was treated differently than other shareholders and was affected disproportionately. *See, e.g.*, *Dowling v. Narragansett Cap. Corp.*, 735 F. Supp. 1105, 1113 (D.R.I. 1990). Plaintiffs have stated a claim on with relief can be granted.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss as moot or, in the alternative, deny it as and permit discovery to proceed.

Dated: December 31, 2020

Respectfully submitted,

_/s/ Vineet Bhatia_ _____

Vineet Bhatia
SUSMAN GODFREY L.L.P.
State Bar No. 00795976
S.D. Adm. #20187
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
Email: vbhatia@susmangodfrey.com

_Attorney-in-Charge for EDGE196, LLC and Jaikrishna Patel_

OF COUNSEL:

Jenna Farleigh
Washington State Bar No. 47392
SUSMAN GODFREY L.L.P.
1201 Third Avenue
Seattle, Washington 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
E-mail: jfarleigh@susmangodfrey.com

## CERTIFICATE OF SERVICE

I certify that on December 31, 2020, a true and correct copy of this document properly was served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing.

*/s/ Vineet Bhatia*
Vineet Bhatia