IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISON

| | | |
|---|---|---|
| EDGE196, LLC AND<br>JAIKRISHNA PATEL | § <br> § <br> § | |
| *Plaintiffs,* | § <br> § <br> § | |
| | § <br> § | Civil Action  No. 4:20-cv-03417 |
| JOINTER, INC., JUDE G. REGEV,<br>DEBBIE ROSENBLUM,<br>AND KYLE WHITE | § <br> § <br> § <br> § | |
| *Defendants*. | § <br> § | JURY TRIAL DEMANDED |

## DECLARATION OF JAIKRISHNA ("JAY") PATEL

I, Jaikrishna ("Jay") Patel, declare and state as follows:

1.      I am at least 18 years of age, capable of making this declaration, and have personal knowledge of the facts stated herein.

2.      I am the Founder and CEO of EDGE196 ("EDGE"), a company incorporated in Delaware, United States, and headquartered with its principal office located in Sugar Land, Texas, United States. EDGE is a single-member LLC that is 100% owned by me and has at all times been based in Texas.  I offer this declaration in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and, In the Alternative, Partial Motion to Dismiss for Failure to State a Claim ("the Opposition").

3.      I personally reside in Texas and have lived there continuously since 2014. I do not personally own any property or have a personal bank account in California.

4.      I conceived of EDGE in Texas in 2016. The goal of EDGE was and remains to  create an interconnected global ecosystem in the startup space. EDGE initially provided start-up news and events, stories, and challenges from various countries. It later launched its website in September 2017.

5.     In January 2018, EDGE initiated the Global Startup Challenge, in which over 4,000 startups across the globe competed for a $1,000,000 investment. The competition was sponsored by and principally driven by Texas-headquartered EDGE. I planned to provide the investment. The concept was that the maiden competition would turn into a series of competitions that rotated venue, with the first one in New Delhi, India.

6.     I first met Jude G. Regev ("Regev"), who often goes by Yoda, in February 2018. At the time, Mr. Regev's company Jointer, Inc. ("Jointer") was participating in the 2018 Global Startup Challenge.

7.     Jointer is a commercial real estate blockchain startup that strives to simplify the commercial real estate industry through the use of pooled funds in a token system that offers returns based on three digital asset class models. Jointer works by holding a daily auction allowing investors to win JNTR at a discount where the discount increases as more money is invested. Investors participate in the daily Jointer Auction by contributing funds. And the daily JNTR token supply is distributed to all investors on a pro-rata basis. The tokens are then held by an investor and can be sold at any time based on the current face value of the token. The raised funds are used to purchase commercial real estate properties. Interested property buyers can make a commercial real estate purchase by partnering with Jointer. In that situation, the property buyer contributes a portion of the property value while Jointer contributes the remaining amount. The property buyer and Jointer then each receive a 50% ownership interest in the property and Jointer remains a passive partner but offers its investors 90% downside protection and 24/7 liquidity. Mr. Regev is Jointer's founder and Chief Executive Officer. At all times he has served as Jointer's primary representative in negotiations with EDGE and Patel.

8.     My first in-person meeting with Mr. Regev occurred in February 2018 at the Veggie Garden restaurant in Mountain View, California. The only attendees were me, another EDGE member, and Mr. Regev. No lawyers were present. During it, Mr. Regev repeatedly sought affirmation that he and Jointer would win the Global Startup Competition, which was wrapping up in the following month. I declined to provide Mr. Regev with the affirmation he sought since a board of experts were to determine the competition winners and I wanted to remain neutral. During that dinner, Mr. Regev also repeatedly stated that Jointer would be "bigger than Uber," that it would have a "trillion dollar market value," and that Jointer would be the "number 1 business in the world." He further emphasized the progress he was making on Jointer and said it would  be launched by early summer 2018.

2

9.     At the beginning of March, EDGE began performing due diligence and negotiating with some of the Global Startup Competition finalists. Because Jointer was a US-based company, Houston-based attorney Samuel Whitley began speaking to Mr. Regev in this context at my direction. In mid-March 2018, the experts running the competition told me that Jointer would win the Global Startup Competition. At the time, I expressed interest in investing an additional $1,000,000 into Jointer. That additional investment was to be paid after the original prize money from the competition was spent. Mr. Whitley then negotiated with Mr. Regev regarding the investment in Jointer and reached agreed-upon terms with Mr. Regev. I am not aware that any California lawyer was involved in those discussions.

10.     To commemorate the investment arrangement, on March 16, 2018, myself and Jointer entered into a Simple Agreement for Future Equity ("the SAFE"). A true and correct copy of the SAFE is attached as **Exhibit A** to the Opposition.

11.     Under the SAFE, I agreed to invest a total of $2,000,000 into Jointer. The SAFE, which established a long-term financing arrangement between the parties, was executed between me personally as the "Holder" and Jointer. It was signed by Mr. Regev in his capacity as Jointer's CEO. It also listed a Dickinson, Texas address for me. The SAFE has a face value of $2,000,000, which includes the prize money won by Jointer in the Global Startup Competition. Me and Mr. Regev were both aware that Jointer would be announced the winner of the competition when we executed the SAFE. After the SAFE was executed, I paid the first tranche of funds resulting from the competition totaling $100,000 via wire to Jointer on April 2, 2018. An addendum to the SAFE was later signed by the parties. A true and correct copy of the Addendum to the SAFE is attached as **Exhibit B**.

12.     My second in-person meeting with Mr. Regev occurred in April 2018. At that time, I was planning to travel to San Francisco, California to attend the LendIt Fintech Summit. EDGE was a partner in the event. Given that Jointer had recently won the Global Startup Competition, I pulled some strings and managed to get Mr. Regev registered for the summit even though it was already full and registration had ended. I also managed to get Jointer a presentation spot on stage, where I gave Mr. Regev a check for $1,000,000. That was the picture submitted by Jointer at Dkt. 21, Ex. 1-A. Because I had already wired $100,000 to Jointer, Mr. Regev gave me the stage check back. I then gave Mr. Regev another check for  $900,000 constituting the remainder of the winnings from the competition. That check in the amount of $900,000 was Bank of America Check No. 104, dated April 10, 2018. Jointer

deposited that check on the same date and funds were removed from my Texas bank account.

13.     Although I had not traveled to California exclusively to meet with Mr. Regev and Jointer but to attend the LendIt Fintech Summit, I was invited to a dinner by Mr. Regev. A few of the other Jointer investors also attended that dinner, which was at the Veggie Garden in Mountain View, CA. That dinner lasted an hour or two. It was not a formal investor meeting and was more a "meet and greet" to allow myself to get acquainted with the other Jointer investors. This is one of two in-person meetings that I had with Jointer in California.

14.     In late April 2018, Mr. Regev and myself traveled to New Delhi, India to attend the Global Startup Competition ceremony on April 19, 2018. On stage, I presented Jointer a $1 million "dummy" stage check. That is the picture submitted by Jointer at Dkt. 21, Ex.1-B. I explained to Mr. Regev that the stage check could not be cashed. Following that event, I also gave Jointer additional funding under the SAFE. First, I gave Mr. Regev Bank of America Check No. 106 in the amount of $1,000,000. I furnished that check to him on or around April 20, 2018. When I gave Mr. Regev the check, I asked him not to deposit it until a later date at my direction. Mr. Regev did not attempt to cash that check in either 2018 or 2019. In January 2020, the parties later agreed in an Addendum to the License Agreement on a timeline for financial contributions to Jointer. At the time, Mr. Regev confirmed that he would not cash Check No. 106. Despite those promises, Mr. Regev attempted to cash the check on November 10, 2020—more than a month after this lawsuit was filed. A true and correct screenshot of my bank activity on November 10, 2020, with an image of the check is attached as **Exhibit C**. Because I gave the check to Mr. Regev in 2018, it appears that Mr. Regev either wrote in or changed the date on that check, post-dating it to 2020. This belated attempt to cash the check caused my Texas-based bank account to overdraw. I then froze that check. I believe Mr. Regev attempted to cash that check and then report the issue to the local district attorney in California in order to obtain leverage in this litigation.

15.     Further demonstrating that Check No. 106 was written in 2018 is the fact that I write my checks sequentially and later-numbered checks were cashed in 2018, demonstrating that I wrote Check No. 106 in 2018.

16.     In 2019, Jointer had still not launched and I began getting concerned about Jointer's lack of progress. This was true despite receiving repeated assurances from Mr. Regev that Jointer's launch was imminent and that the technology was "ready to go."

17.     Around that same time, EDGE began working on a two-token model venture capital fund and openly discussed that concept with Mr. Regev. Mr. Regev told me that he believed a three-token model would work better for EDGE and volunteered to build the three-token model and license it back to EDGE. Mr. Regev promised that it would be ready by September 30, 2019.

18.     To commemorate the agreement surrounding the development and delivery of the three-token platform for EDGE's venture capital fund and related items, on August 9, 2019, EDGE and Patel entered into a License Agreement with Jointer. That License Agreement was negotiated by and ultimately signed by Mr. Regev. A true and correct copy of that License Agreement is attached as **Exhibit D.** That License Agreement was later revised on August 12, 2019. A true and correct copy of that License Agreement is attached as **Exhibit E.** I paid the $100,000 required by the License Agreement in full, fulfilling my obligation under the License.

19.     By October 2019, Mr. Regev and Jointer had still not delivered the material promised under the License and I was concerned that the work was not being completed. To address these concerns, Mr. Regev personally volunteered to travel to Houston, Texas specifically to meet with me. I picked Mr. Regev up at the airport when he flew in. I had two meetings with him during his visit. During those meetings, Mr. Regev provided specific reasons why the project had been delayed. He also promised to deliver the required material to EDGE in Texas so that the token could be launched by November 2019. He further promised that the EDGE system would be launched simultaneously with the Jointer token system and that he would not launch JNTR in advance of launching the EDGE system. That meeting quelled my concerns for a while.

20.     However, the launch did not occur in November 2019 and the material was still owed. By 2020, still desiring the promised material under the License, I insisted that Jointer perform its obligations under the License. In response, Mr. Regev ultimately requested that we enter into an Addendum to the License. That executed Addendum was entered into on January 29, 2020. A true and correct copy of that Addendum to the License Agreement is attached as **Exhibit F.** The Addendum further specified existing and additional technology Jointer and Mr. Regev would create and deliver to EDGE and myself in Texas. In exchange, I would provide additional money and more favorable terms to Jointer than existed in the original License Agreement. In connection with entering into the Addendum, Mr. Regev promised the three-token model would be ready to launch in April 2020.

21.    Specifically, that Addendum required me to pay an additional $15,000 to complete the original work and also make certain "Improvements," including (1) providing a solution for Whitelist, which Regev said would take seven days to develop; (2) integrating EDGE wallet to the Jointer system, which Regev said would take ten days to develop; and (3) creating multiple smart contracts between the relevant entities, which Regev said would take fourteen days to develop. The Addendum also included a provision noting that any dispute regarding the License or Addendum would first be mediated in Houston under Texas law. Mr. Regev was aware of that provision and freely agreed to it.

22.    In early February 2020, Mr. Regev again traveled to Texas to work on the items promised in the License Agreement and the Addendum. Mr. Regev stayed for a few days and attended multiple meetings with EDGE and its partners. During one of those meetings, we meet with Entoro—a broker dealer that would assist both Jointer and EDGE with their token offerings. At that meeting, Mr. Regev again promised that EDGE and Jointer would launch together, simultaneously. The target date for the launch promised by Mr. Regev and agreed to by me was April 6, 2020— a date that would avoid April Fools' Day.

23.    Despite Mr. Regev's assurances during that trip, Jointer never fulfilled its obligations under the License and related Addendum. Contrary to his assurances, Mr. Regev integrated JNTR technology on CoinTiger in September 2020 without integrating EDGE's associated platform. He also launched Jointer without EDGE's associated platform on other exchanges.

24.    Following the launch, Mr. Regev stated that Jointer had a market capitalization of $3.5 billion that will grow significantly in a short period of time. Mr. Regev also announced that it would be engaging in a "special" JNTR "bonus" token distribution scheme that would provide additional token to Jointer investors and employees. Mr. Regev refused to issue these bonus tokens to me unless I waived my legal claims under the prior agreements between the parties that Jointer breached. I had already refused to waive these legal rights in attempts to negotiate a Second Addendum and then a Distribution Agreement. I have still not received the bonus tokens, which uniquely dilutes both my owed equity under the terms of the SAFE as well as the control I can exercise over the company.

25.    Throughout the relationship between the parties, I have mostly served as a remote investor. Beyond the dinner I attended in April 2018, I have attended one other dinner in person with Jointer individuals. That in-person meeting, which was also at a restaurant was held in Mountain View sometime in mid-2019. I was already

out in California for a series of other meetings related to different EDGE business. When I was invited to the meeting, I attended for about 15 minutes before rushing to the airport. All other meetings with Jointer that I attended were over the phone or over the computer. Other than my many call with Mr. Regev, the few I remember that involved Jointer investors were brief investor calls.

26.    The relationship between Jointer and EDGE was designed to be long-term. Documents received as part of discovery efforts in this case demonstrate that Mr. Regev viewed EDGE as a "sister company" to Jointer. A true and correct copy of that once such email is attached as **Exhibit G.**

27.    Based on my review of Defendants' motion and the associated documents, I understand that Mr. Regev claims that EDGE has offices in India, San Francisco, and Houston. That is not true. EDGE does not have offices in India and is not based out of India. It has no employees in India. Instead, EDGE has a sister company in India named Nrisi that employs its own staff.  EDGE further does not have an office in California and has no employees there.

28.    I also understand that Mr. Regev claims that there was a specific discussion of a SAFE Agreement during my February 2018 dinner meeting with him at Veggie Garden and that California lawyers were involved in that discussion. That is also not true. At the time of that meeting, Jointer had not even been announced as a finalist in the Global Startup Competition and so any investment in them would have been premature and a potential conflict. The meeting was instead introductory and no lawyers (let alone California lawyers) were present. The parties did not begin negotiating the SAFE Agreement until after the February meeting.

29.    Together with the Opposition, Plaintiffs are filing a First Amended Complaint. A true and correct copy of that License Agreement is attached as **Exhibit H.**

        Executed this 31st day of December, 2020 at Sugar Land, Texas, Fort Bend County, Texas.

_____

Jaikrishna Patel

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 31, 2020, a true and correct copy of this document properly was served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing.

*/s/ Vineet Bhatia*
Vineet Bhatia