IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISON

| | | |
|---|---|---|
| EDGE196, LLC AND JAIKRISHNA PATEL | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | Civil Action  No. 4:20-cv-03417 |
| | § | |
| JOINTER, INC., JUDE G. REGEV, | § | |
| DEBBIE ROSENBLUM, AND KYLE WHITE | § | |
| | § | |
| *Defendants.* | § | JURY TRIAL DEMANDED |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' CONDITIONAL AMENDED MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

SUMMARY ......................................................................................1

PROCEDURAL HISTORY........................................................4

FACTS ...........................................................................................5

ARGUMENT ................................................................................7

I.  Personal Jurisdiction Exists Over All Defendants On All Claims. ................7

    A.  Specific Jurisdiction Exists Over Jointer on the Contract Claims. ..............................................................8

    B.  Specific Jurisdiction Exists Over Defendants on the Tort Claims. ..............................................................12

    C.  Specific Jurisdiction Exists Over the Declaratory Claim..................14

    D.  Exercise of Personal Jurisdiction Is Reasonable. ...............................14

II.  The Court Should Deny Defendants' "Partial" Motion to Dismiss for Failure to State A Claim. ..........................................................18

    A.  Plaintiffs State a Claim For Breach of Fiduciary Duty. ......................18

    B.  Plaintiffs State a Claim Under the Declaratory Judgment Act. ..........20

CONCLUSION ..........................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpine View Co. Ltd. v. Atlas Copco AB,*
205 F.3d 208 (5th Cir. 2000) ............................................................................7, 8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..........................................................................................20

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985)............................................................................................8

*Central Freight Lines, Inc. v. APA Transport Corp.,*
322 F.3d 376 (5th Cir. 2003) ..............................................................................9

*Dowling v. Narragansett Capital Corp.,*
735 F. Supp. 1105 (D.R.I. 1990)........................................................................20

*Electrosource, Inc. v. Horizon Battery Techs., Ltd.,*
176 F.3d 867 (5th Cir. 1999) ..............................................................................9

*Hampton v. Equity Tr. Co.,* 736 F. App'x 430 (5th Cir. 2018)....................................10

*Healix Infusion Therapy, Inc. v. Helix Health, LLC,*
No. H-08-0337, 2009 WL 10713112 (Nov. 30, 2009) .............................15, 16, 17

*In re Tri-Star Pictures, Inc., Litig.,*
634 A.2d 319 (Del. 1993), as corrected (Dec. 8, 1993).........................................19

*Jones v. Petty-Ray Geophysical, Geosource, Inc.,*
954 F.2d 1061 (5th Cir. 1992) .............................................................................8

*King v. Douglass,*
973 F. Supp. 707 (S.D. Tex. 1996) ......................................................................19

*Lewis v. Fresne,*
252 F.3d 352 (5th Cir. 2001) .............................................................................11

*Lochhead v. Alcano,*
697 F. Supp. 406 (D. Utah 1998).......................................................................20

*Mantissa Corp. v. Ondot Sys., Inc.,*
267 F. Supp. 3d 918 (S.D. Tex. 2017) ..................................................................3

*McFadin v. Gerber,*
587 F.3d 753 (5th Cir. 2009) .......................................................................11, 12

ii

*Michiana Easy Livin' Country, Inc. v. Holten*,
    168 S.W.3d 777 (Tex. 2005) ........................................................................14

*Pacesetter Sys., Inc. v. Medtronic*,
    Inc., 678 F.2d 93 (9th Cir. 1982) ...............................................................17

*Pederson v. Frost*,
    951 F.3d 977 (8th Cir. 2020) ...........................................................11, 12, 13

*Polythane Sys., Inc. v. Marina Venturs Intern., Ltd.*,
    993 F.2d 1201 (5th Cir. 1993) ...............................................................9, 10

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) .........................................................................19

*Transcor Astra Grp. S.A. v. Petroleo Brasileiro, S.A.-Petrobras*,
    No. 4:08-CV-2072, 2010 WL 11530853 (S.D. Tex. Feb. 12, 2010) .................8, 11

*Walden v. Fiore*,
    571 U.S. 277 (2014) ....................................................................................13

*Wien Air Alaska, Inc. v. Brandt*,
    195 F.3d 208 (5th Cir. 1999) ...............................................................11, 14

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ....................................................................................20

## Statutes

Uniform Commercial Code § 2-308 ...........................................................................11

## <u>SUMMARY</u>

In their Conditional Amended Motion to Dismiss in response to Plaintiffs' First Amended Complaint ("FAC"), Dkt. 31, Defendants Jointer, Inc. and its founder and sole leader, Jude Regev, fail to respond to the FAC's jurisdictional allegations and succeed only in retreading tired ground. Dkt. 31 (FAC); *see also* Declaration of Jaikrishna Patel ("Patel Decl.").[1] Defendants admit that their renewed motion contains "largely non-substantive changes from their pending Motion to Dismiss" and state it was only filed to "avoid any waiver or untimeliness arguments." Dkt. 35 at 1. Given this posture, the re-filed motion fails for the same reasons stated in Plaintiffs' Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and, In the Alternative, Partial Motion to Dismiss for Failure to State a Claim—arguments incorporated herein. Dkt. 30.

First, personal jurisdiction exists over all claims and all Defendants. Contrary to the picture Defendants paint, this lawsuit is the result of a soured long-term relationship between business entities and their respective founders relating to various contracts that were negotiated by the parties in Texas, were partially performed in Texas, and envisioned materials being delivered to Texas. Jurisdiction is based on these facts and not merely on Plaintiffs' belief that "their Texas residency

---

[1] The Patel Declaration and Exhibits are unchanged from what is present in Dkt. 30. But those materials are refiled with this opposition for ease.

is sufficient to confer jurisdiction over Defendants." Dkt. 33 at 6. The intent of the relationship between the parties was clear: to form a long-term "sister" relationship between the companies wherein Jointer and Regev would get money and EDGE and Patel would get technical expertise and materials for the co-launch of its own three-token crypto offering. As a result of the breach of these contracts, Plaintiffs suffered consequences in Texas. This is sufficient for jurisdiction over the contract claims.

The parties agree that the declaratory judgment claim against Jointer alone relates to the SAFE Agreement or "Convertible Note" between the parties, Dkt. 35 at 13 (admitting that it is "irrefutable" that this claim is based on "the Convertible note and addendum"). Because specific jurisdiction exists over Jointer on the contract claims, it likewise exists over it on the declaratory judgment claim.

There is also jurisdiction over Jointer and Regev on the remaining tort claims for breach of fiduciary duty, fraud, and negligent misrepresentations and omissions. These claims specifically allege that Regev made material misrepresentations and omissions to Patel *in Texas* that fraudulently induced Patel to enter into the various agreements with Jointer and concealed Regev's intent to deprive Patel of his rights under the SAFE while simultaneously extracting more money from him. Dkt. 31, ¶¶ 73-82. The tort allegations also make clear that distribution of "bonus tokens" to Jointer employees and investors while denying those same rights to Patel absent

wavier of material, unrelated legal claims amounts to a unique dilution of his ownership in the company causing specific harm to a Texas enterprise. *Id.* ¶¶ 67-72.

Defendants' alternate argument that exercising personal jurisdiction over them would be constitutionally "unreasonable" likewise fails. Dkt. 35 at pp. 13-14. Defendants *still* do not raise an objection to venue in the Southern District of Texas, waiving any venue defense. *Mantissa Corp. v. Ondot Sys., Inc.*, 267 F. Supp. 3d 918, 923 (S.D. Tex. 2017). Defendants also fail to explain the burden of litigating in Texas and have not made a compelling case for why the exercise of jurisdiction there would be unconstitutional. Worse yet, Defendants' arguments as to why jurisdiction would be unreasonable is based on incorrect facts, such as its false contention that "Plaintiff EDGE196 has an office in California." Dkt. 35 at 13; *see* Patel Decl. ¶ 27 (stating that "EDGE … does not have an office in California").

Second, Defendants' "partial" motion for summary judgment is also procedurally and legally deficient. Defendants continue to misstate the crux of Plaintiffs' breach-of-fiduciary duty claim, as clarified in the FAC, in seeking to obtain its dismissal. The claim is ripe given Patel's existing right to a conversion to preferred shares under the SAFE Agreement. Defendants further misstate the law in claiming that the breach-of-fiduciary-duty claim cannot be brought as a direct action. Because Patel was uniquely treated and disproportionately harmed by Jointer and Regev's issuance of "bonus tokens" (and its concomitant refusal to issue those

tokens to Patel absent conditions that only materially affected him), a direct action is appropriate. Additionally, Defendants' attack on the declaratory claim does not even assert a deficiency in pleading but instead relies on inapposite case law to argue that the Court should exercise "discretion" to knock out the claim in this early stage. Such a stretch of precedent should not be adopted.

## PROCEDURAL HISTORY

EDGE and Patel filed this action on October 2, 2020, asserting three distinct breach of contract claims, a declaratory judgment claim, and a breach-of-fiduciary duty claim. All claims arise out of Jointer, Inc.'s and its founder's contacts and relationship with its Texas-based investor EDGE196, LLC and its backer and founder, Patel, who is a Texas resident. On November 27, 2020, Plaintiffs moved to dismiss the complaint for lack of personal jurisdiction and, in the alternative, partially moved to dismiss for failure to state a claim. Dkt. 21. On December 2, 2020, the Court held a scheduling conference and issued a Scheduling Order, setting a December 31, 2020 deadline for amended pleadings. Dkt. 24. Plaintiffs informed Defendants that, in light of the motion to dismiss, they would be amending their Complaint and sought an unopposed motion for an extension of time to respond to Defendants' Motion to Dismiss until December 31, 2020. Dkt. 28. That motion was granted on December 21, 2020. Dkt. 29. On New Years' Eve, Plaintiffs filed a timely FAC, Dkt. 31, and responded to Defendants' original motion to dismiss, Dkt.

30. On January 11, 2021, Defendants filed a reply in support of their original motion. Dkt. 33. And, on January 14, 2021, Defendants filed a Supplemental or "Conditional" Amended Motion to Dismiss that restated the old arguments. Dkt. 35.

Despite Defendants' attempts to stall this case, discovery has been progressing swiftly. Dkt. 36 (denying Defendants' request to stay discovery). Documents have been produced by seven third parties as well as Jointer itself. A deposition of Regev is scheduled via teleconference for March 8, 2021. So far, discovery has revealed that Jointer is a fraud that owns *zero* commercial properties. Its JNTR tokens also appear to be owned only by investors and company insiders.

## FACTS

The fact section in Defendants' motion is a cut-and-paste of the fact section from its original motion to dismiss (complete with typos). *Compare* Dkt. 21 at 4-6, *with* Dkt. 35 at 4-6. Defendants did not even bother to correct factual inaccuracies raised in Plaintiffs' original opposition. *See, e.g.*, Dkt. 30 at 9 (pointing out that there was no specific discussion of a SAFE during a February 2018 meeting between Patel and Regev in California). To spare the Court duplication, Plaintiffs incorporate herein the fact section and exhibits from their original opposition brief. *Id.* at 3-7.

Plaintiffs do note, however, that Defendants' version of the facts strategically minimizes their actual contact with Texas. Defendants cannot deny that they have always been aware of EDGE and Patel's Texas residency; the original Simple

Agreement for Future Equity ("the SAFE") between the parties listed a Dickinson, Texas address for Patel. Patel Decl., Ex. A. And there is no question that under Defendants' contracts with Plaintiffs, they were obligated to deliver physical materials to Texas. The August 12, 2019, License Agreement between the parties promised delivery of many items, including copies of various "papers," code, presentations, and other "documents" to EDGE in Texas. *See id.*, Ex. D.

When Regev failed to deliver these materials, he **volunteered** to travel to Texas in October 2019 to meet with Patel and work on the project. *Id.* ¶ 19; *see also* Dkt. 35, Ex. 1, ¶ 10 (Regev Declaration). This work consisted of two meetings in which Regev provided specific reasons for the delay and continued to promise to deliver the required material to EDGE in Texas so that the token could be launched by November 2019 together with the Jointer token system. Patel Decl. ¶ 19. Regev also promised not to launch JNTR before EDGE's offering. *Id.*

When Defendants still did not deliver, the parties entered into an Addendum to the License. That Addendum again promised the provision of additional materials to EDGE in Texas. *See id.* ¶ 20. And it specifically provided that any dispute regarding either the License or Addendum would first be mediated **in Houston, Texas** applying **Texas law**. *Id.* ¶ 21. To support the work owed under the contracts, Regev admits that he made yet **another** trip to Texas in February 2020. Dkt. 35, Ex. 1, ¶ 10. During that trip, which lasted a few days, Regev attended multiple meetings

with EDGE and its partners, including Entoro. Patel Decl. ¶ 22. During that meeting, Regev again promised that EDGE and Jointer would launch together, simultaneously on April 6, 2020. *Id.* As alleged, Regev made these promises knowing that none of this was possible and with an intent to induce Patel into funneling more money to Jointer.

As repeatedly alleged in the FAC, despite Regev's assurances, Jointer never fulfilled its obligations under the License and Addendum and launched Jointer without EDGE's associated platform in fall 2020. *Id.* ¶¶ 23-24. It also announced that it would be engaging in a "special" JNTR "bonus" token distribution scheme under the guise of providing additional token to Jointer investors. *Id.* In reality, the "bonus" tokens were nothing more than a rouse to provide Jointer (ultimately, Regev) with over 8.6 billion tokens and force unreasonable restrictions and demands upon Patel. *Id.* This caused harm to Plaintiffs in Texas.

### **ARGUMENT**

## I.     **Personal Jurisdiction Exists Over All Defendants On All Claims.**

The parties agree that personal jurisdiction over a nonresident defendant is proper when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Alpine View Co. Ltd. v. Atlas*

*Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Plaintiffs only contend that specific jurisdiction exists over the claims. *Id.* (noting that specific jurisdiction exists where "(1) the defendants have minimum contacts with Texas and (2) its causes of action arise out of or result from the defendant's respective contracts").

Defendants ignore the undisputed facts establishing minimum contacts between themselves and Texas as well as the case law that deems those contacts sufficient. Defendants also fail to establish their burden to show that the assertion of jurisdiction would be unfair. *See, e.g.*, *id.* at 215; *see also Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992) (defendant's burden is to show a "compelling case"). For both of these reasons Defendants' motion to dismiss for lack of personal jurisdiction should be denied.

## A. Specific Jurisdiction Exists Over Jointer on the Contract Claims.

Defendants argument that there is no personal jurisdiction over Jointer on the contract claims is premised entirely on its ignorance of facts and dispositive law.

First, Jointer ignores that, even absent any physical tie to the forum state, jurisdiction in a contract dispute is appropriate where the dispute grew out of "a contract which had a ***substantial connection*** with that State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985) (quoted source omitted) (emphasis in original). Specifically, where "the nonresident's contacts with the forum were instrumental in the formation of the contract," jurisdiction exists. *Transcor Astra*

*Grp. S.A. v. Petroleo Brasileiro, S.A.-Petrobras*, No. 4:08-CV-2072, 2010 WL

11530853, at *16 (S.D. Tex. Feb. 12, 2010); *see also Electrosource, Inc. v. Horizon*

*Battery Techs., Ltd.*, 176 F.3d 867, 872 (5th Cir. 1999) (noting that jurisdiction is

also appropriate where the parties' contracts contemplated future consequences in,

or a continuing relationship with, the forum state).

Here, the SAFE Agreement[2] was negotiated between Jointer and Patel's

Houston-based attorney over several weeks in late-February to mid-March 2018.

Patel Decl. ¶ 9. That agreement provides a Dickinson, Texas address for Patel and

establishes a long-term relationship between the parties—a relationship further

continued by a later-signed Addendum to the SAFE. *Id.*, Ex. B. *Central Freight*

*Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376 (5th Cir. 2003) (noting that the

exercise of personal jurisdiction is appropriate where a contract created a "long-

term" relationship with the forum state). Similarly, the License Agreement between

the parties was negotiated over time between Jointer and Houston-based EDGE. *See*

Patel Decl. ¶ 9. Both versions of the license agreement contemplate ***delivery*** of

materials to EDGE in Texas. *See id.*, Exs. D & E; *see also Polythane Sys., Inc. v.*

*Marina Venturs Intern., Ltd.*, 993 F.2d 1201, 1205 (5th Cir. 1993) (noting that if the

place where the contract is to be performed is also in the forum state, that is a

---

[2] Although Jointer is correct that the SAFE Agreement contained a Delaware choice-of-law
provision, they concede that fact is not dispositive of the jurisdictional analysis. Dkt. 35 at 7.

"'weighty consideration' in ascertaining" jurisdiction). The contract itself required "complete transfer of all [materials]" to EDGE in Texas before payment was required. *Id.*, Ex. D. The Addendum further provided that additional materials would be provided to EDGE in Texas. *Id.*, Ex. F. And it also envisioned a long-term relationship in the form of both a license that would "continue in perpetuity" as well as a continuing development relationship (Section 3) and investment commitment from Plaintiffs (Section 8). *Id.* Finally, the Addendum contains a dispute resolution provision that states that "[a]ny dispute will be settled by mediation in Houston, Texas" and that the mediator "shall apply Texas law." *Id.* This alone establishes an intended substantial connection between Defendants and Texas. Plaintiffs' later agreement to participate in a remote mediation from Texas with Defendants' California-based mediator during a global pandemic in no way changes that calculus. Even if waiver of the mediation clause had occurred (it didn't), that would at most change Plaintiffs' ability to enforce the mediation provision; it would not alter the establishment of personal jurisdiction.[3]

Second, beyond ignoring that the ***creation*** of the contracts alone establishes specific jurisdiction, Defendants wrongfully argue that jurisdiction does not exist

---

[3] The *Hampton* case also does not support Defendants' position. 736 F. App'x 430, 435 (5th Cir. 2018). It addressed waiver of enforcement of a forum selection clause, noting that waiver can occur where a party behaves in a manner "so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." *Id.* It did not address personal jurisdiction. *Id.*

because "[a]ll alleged Jointer breaches occurred in California." Dkt. 35 at 7. This assertion is factually untrue. Not only did Jointer fail to deliver the materials required under the contracts to EDGE in Texas, resulting in breach, but Regev admits to traveling to Texas repeatedly to perform work associated with the contracts. *See* Uniform Commercial Code § 2-308 (noting that the default location of delivery of goods is also the place of the purchaser's business or residence). In any event, "[i]f facts are disputed," which Defendants' admit, "[Plaintiffs are] entitled to have the conflicts resolved in [their] favor." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999). Accordingly, jurisdiction exists for the separate reason that the contracts were breached in Texas. *Transcor Astra Grp. S.A.*, 2010 WL 11530853, at *16 (S.D. Tex. Feb. 12, 2010) (noting that jurisdiction is proper where contacts with the forum were instrumental in the breach of a contract).

Third, and finally, Defendants contend, again incorrectly, that specific jurisdiction over the contract claims is somehow undermined by Jointer's self-serving (and incorrect claim) that they operate only in California and "do[] not direct commerce to Texas." Dkt. 35 at 9. But that is a misstatement of the law. It is well-settled that a "single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis v. Fresne,* 252 F.3d 352 (5th Cir. 2001). The *McFadin* and *Pederson* cases cited by Defendants are also inapposite. In *McFadin,* the Court found a lack of personal jurisdiction over a

contract claim where the "contract was centered around . . . operations outside Texas" and "Grenemyer never traveled to Texas." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009). Similarly, in *Pederson*, there was "no allegation that any of the defendants ever . . . set foot in Minnesota" where jurisdiction was in question. *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020). Here, Regev's two intentional visits to Houston to perform work under contracts that included one with a Texas forum selection clause and a Houston mediation provision that envisioned delivery of items *to Texas* is more than enough to establish personal jurisdiction. Jointer's contrary conclusion that California, not Texas, was the "hub" of activity under the contract is dead wrong. Dkt. 35 at 10. The evidence demonstrates that there was just as much travel to Texas as there was to California by all parties and, if anything, the trips Regev made to Texas were *more specific* to the contract work than the trips Patel made to California. Sufficient minimum contacts exist.

### B. Specific Jurisdiction Exists Over Defendants on the Tort Claims.

The FAC contains three tort claims: (1) a re-plead breach of fiduciary duty claim relating to Regev's decision to have Jointer distribute "bonus tokens" to Jointer employees and investors while denying those same rights to Patel absent wavier of unrelated legal claims amounts to dilution of his ownership in the company and results in the breach of a fiduciary duty by both Regev and Jointer; (2) a new fraud claim that alleges that Regev made material misrepresentations to Patel and

EDGE that fraudulently induced Plaintiffs to enter into the various agreements at issue; and (3) a new negligent misrepresentations and omissions claim based on similar conduct. Dkt. 31, ¶¶ 67-82.

Defendants contend that the Court lacks personal jurisdiction over all three of these claims because the claims have no link to Texas. Dkt. 35 at 11. That is wrong. The FAC specifically alleges that Jointer, through Regev, intentionally "promised that the EDGE system would be launched simultaneously with the Jointer token system and that Regev would not launch JNTR in advance of launching the EDGE system." Dkt. 31, ¶ 76. It alleges that Regev made these false promises intentionally to "fraudulently induce[] him to continuing his relationship with Jointer and to ultimately enter into the Addendum." *Id.* It further alleges that Regev "grossly misstated the amount of work still left to be done, representing that (1) providing a solution for Whitelist would take seven days to develop; (2) integrating EDGE wallet to the Jointer system would take ten days to develop; and (3) creating multiple smart contracts between the relevant entities would take fourteen days to develop." *Id.* These allegations were specifically made ***during meetings in Texas*** in October 2019 and February 2020 by Regev who was physically present in the state. Patel Decl. ¶¶ 19 & 22. That is sufficient to confer jurisdiction over the fraud and negligent misrepresentation and omission claims. *Walden v. Fiore*, 571 U.S. 277, 283–84, 286 (2014) ("A forum State's exercise of jurisdiction over an out-of-state intentional

tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum."). *Michiana Easy Livin' Country, Inc. v. Holten* does not prove otherwise since that case attempted to rely on "phone calls" to a forum state to establish personal jurisdiction, not **physical presence** in the forum state, which exists here. 168 S.W.3d 777, 791 (Tex. 2005). Similarly, the re-plead breach-of-fiduciary-duty claim has sufficient contacts to Texas since the decision by Regev and Jointer to violate a fiduciary duty owed to EDGE and Patel also caused ripple effects in Texas, diluting the value of interests owed to an investor there. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999).

### C. Specific Jurisdiction Exists Over the Declaratory Claim.

Defendants' admit that jurisdiction over this claim rises or falls with the breach of the SAFE claim. *See* Dkt. 35 at p. 13 (calling the declaratory judgment claim a "repackaged" breach of contract claim). Because specific jurisdiction exists over Jointer on the contract claim, it likewise exists over this claim.

### D. Exercise of Personal Jurisdiction Is Reasonable.

Defendants' renewed attack mirrors the argument from the original motion that the existence of specific jurisdiction would violate "traditional notions of fair play and substantial justice." Dkt. 35 at 13. But Defendants again fail to make a "compelling case" that the exercise of jurisdiction over them "would be unfair and

unreasonable." *Healix Infusion Therapy, Inc. v. Helix Health, LLC*, No. H-08-0337, 2009 WL 10713112, at *9 (Nov. 30, 2009).

First, the insinuation that resolving this case in Texas would impose financial hardship because "Jointer is a start-up with limited funds based in California" should be rejected. Dkt. 35 at 13. Just as in *Healix*, Jointer and Regev have **still** "not explained the extent of that hardship." 2009 WL 10713112, at *10. And Regev **admits** that he **already** made two trips to Texas (and one to India) in connection with the agreements that gave rise to this litigation. Dkt. 35-1, ¶¶ 7, 10.

Second, Defendants suggest (without stating) that Texas has no interest in serving as the forum since "virtually all individual witnesses, other than Patel, are based in California or in forums other than Texas." Dkt. 35 at 14. That is incorrect. Because EDGE is a single-member LLC (one that is 100% owned by Texas-resident Patel) and is headquartered in Sugar Land, Texas, the state of Texas certainly "ha[s] an interst in litigating [these] claim[s] . . . in this forum." *Healix*, 2009 WL 10713112, at *10 (Texas had an interst in cases involving a Texas corporation). In addition, this relatively compact case is not expected to require many witnesses and the additional EDGE witnesses—to the degree any are needed—are based in Texas. The location of the "investors" doesn't matter since they are not likely witnesses.

Third, Defendants ignore that EDGE and Patel have a clear interest in obtaining timely relief on the efficient schedule already underway. Having been

denied the materials promised by Jointer, EDGE and Patel have had to pivot to obtain additional help to get their own token system launched, costing Patel large sums of money and time. Timely relief could help ameliorate some of these ongoing losses. Forcing EDGE and Patel to refile this lawsuit in California would not only inefficiently undercut that interest but would force the parties to redo some of the discovery that has already been completed.

Fourth, Defendants suggest that Texas is an inefficient forum in which to resolve these claims and that California—who Defendants claim "has an interest in developing its laws relating to start-ups and their investors," Dkt. 35 at 14—shares an interst in the resolution of this case. But that is an overstatement. Defendants themselves acknowledge that "Plaintiffs' claims are essentially contract claims," Dkt. 35 at 3, contradicting any credible argument that the claims would result in legal developments that would apply more broadly to the investor space.

Defendants further conflate the efficiency interests of the interstate judicial system with its own. Although courts consider whether the defendants would be substantially burdened by having to try the case in Texas, they do not compare the relative burden imposed on Plaintiffs versus Defendants. *Healix*, 2009 WL 10713112, at *9. Stated differently, the fact that Defendants may ***prefer*** to litigate the case in California or that Plaintiffs have more resources to absorb the costs of litigating in a far-flung jurisdiction is of no relevance.

Finally, this Court should likewise ignore Defendants' theoretical claims that efficiencies could be captured by trying this case in California since "a dispute already exists regarding the second $1 million check to Jointer that was returned for insufficient funds and that has been reported to a district attorney in California." Dkt. 35 at 14. As noted above, Regev admits that he received that $1 million check "at a second conference, in India," Dkt. 35-1, ¶ 7. But he misleadingly leaves out that that conference was in April 2018. *Id.* (suspiciously noting only that this check was received "[l]ater"). He further omits that he did not even attempt to ***cash*** that check until November 2020—well after this lawsuit was filed. Patel Decl., Ex. C. Defendants cannot manufacture a basis on which to attack personal jurisdiction only after being faced with a lawsuit. Allowing such behavior would end-run personal jurisdiction jurisprudence. The fact that Jointer claims that it "intends to file a civil lawsuit against Patel for his dept obligations, which will result in two parallel proceedings in two different States" also carries little water. Dkt. 35 at 14. Jointer has not yet filed any action and, if it did, Plaintiffs would file a motion to dismiss, stay, or transfer that lawsuit under the first-to-file rule of federal comity that applies when an action is commenced and there is already another case pending presenting similar issues between the same parties. *Pacesetter Sys., Inc. v. Medtronic*, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982).

Contrary to Defendants' position, all of the factors cut in favor of exercising jurisdiction. Defendants have not shown litigating in Texas is unfair or unreasonable.

## II. The Court Should Deny Defendants' "Partial" Motion to Dismiss for Failure to State A Claim.

Defendants' renewed partial motion to dismiss repeats the same attacks leveled against the original complaint, and fails for the same reasons. Dkt. 35.

### A. Plaintiffs State a Claim For Breach of Fiduciary Duty.

Defendants' seek dismissal of the breach-of-fiduciary duty claim by arguing first that it is repetitive of the breach-of-contract claim under the SAFE agreement. Dkt. 35 at 14. But that misstates Plaintiffs' claims that point to the SAFE as the *source* of the fiduciary duties between the parties. The breach of that duty, as alleged in the FAC, stemmed from the issuance of bonus tokens. Defendants next argue that because the SAFE uses discretionary language and that no Jointer equity has issued, no fiduciary duty arose. But that is an oversimplification. Jointer admits that under the SAFE Patel was given the right to exercise an optional conversion under § 3(a)(iii). There is no dispute that the Outside Date has elapsed and all other conditions are satisfied. Although it argues that "Plaintiffs have not plausibly alleged that any such conditions have occurred," Jointer does not identify *any* unsatisfied conditions. Accordingly, under that provision, Patel is entitled to Series Seed Preferred Stock. Defendants are therefore incorrect that "Plaintiffs have not alleged any such steps to conversion." Dkt. 35 at 15.

Defendants also misstate the law in claiming that "[u]nder Delaware law a claim for breach of fiduciary duty can only be brought as a derivative lawsuit by a shareholder." Dkt. 35 at 15. As with the Declaratory Judgment Act claim, this attack is a challenge to "standing" that has wrongfully been repackaged as a failure to state a claim. *King v. Douglass*, 973 F. Supp. 707, 716 (S.D. Tex. 1996) (referring to this as "the standing issue"). But even assuming *arguendo* that the motion is procedurally valid and Delaware law applies, Defendants still get it wrong. Delaware law clearly states that "[t]o sue directly, a plaintiff must allege either an injury separate and distinct from that to other shareholders or a wrong involving a contractual right of the stockholders, such as the right to vote, that exists independently of any right of the corporation." *King*, 973 F. Supp. at 716 & 723-24 (citing *In re Tri-Star Pictures, Inc., Litig.*, 634 A.2d 319 (Del. 1993), as corrected (Dec. 8, 1993); *see also Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004) (clarifying the direct v. derivative analysis). And "[a] claim of stock dilution and a corresponding reduction in a stockholder's voting power is an individual claim." *Id.*

As clarified in the FAC, Plaintiffs assert that although all shareholders were affected by Jointer's issuance of "bonus tokens," only Patel had to give up meaningful rights to obtain those "tokens" and Regev's refusal to issue them without Patel acceding to those conditions diluted Patel's ownership interest in a unique manner. In fact, to date, only Patel has been deprived the bonus tokens at all. His

ownership interest was therefore uniquely diluted in a manner sufficient to make out a direct claim. *Lochhead v. Alcano*, 697 F. Supp. 406, 411-13 (D. Utah 1998). He was treated differently than other shareholders and was affected disproportionately. *Dowling v. Narragansett Capital Corp.*, 735 F. Supp. 1105, 1113 (D.R.I. 1990) (holding an action to be direct where the directors who proposed the sale of corporate assets, at below fair value, had a financial interest in the corporation to which the assets were sold). Plaintiffs have clearly stated a breach-of-fiduciary-duty claim upon with relief can be granted.

## B. Plaintiffs State a Claim Under the Declaratory Judgment Act.

Defendants' seek dismissal on Plaintiffs' declaratory claim not because the claim is legally deficient; instead, Defendants merely ***request*** that the Court dismiss the claim on a discretionary basis as duplicative. Dkt. 35 at 16; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (noting that a district court has "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites"). That is not a proper use of the 12(b)(6) vehicle, which only allows for dismissal if the plaintiff cannot articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendant's Motion.

Dated: February 4, 2021                Respectfully submitted,


                                       */s/ Vineet Bhatia*
                                       Vineet Bhatia
                                       SUSMAN GODFREY L.L.P.
                                       State Bar No. 00795976
                                       S.D. Adm. #20187
                                       1000 Louisiana Street, Suite 5100
                                       Houston, Texas 77002-5096
                                       Telephone: (713) 651-9366
                                       Facsimile: (713) 654-6666
                                       Email: vbhatia@susmangodfrey.com

                                       *Attorney-in-Charge for EDGE196,*
                                       *LLC and Jaikrishna Patel*


OF COUNSEL:

Jenna Farleigh
Washington State Bar No. 47392
SUSMAN GODFREY L.L.P.
1201 Third Avenue
Seattle, Washington 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
E-mail: jfarleigh@susmangodfrey.com

## CERTIFICATE OF SERVICE

I certify that on February 4, 2021, a true and correct copy of this document properly was served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing.

*/s/ Vineet Bhatia*
Vineet Bhatia