# EXHIBIT A

DocuSign Envelope ID: 4DEE4B7F-7C24-426C-9556-88F8DAB990A2

**PROTECTED UNDER FRE 408**

Global Settlement Agreement and Mutual Release

This Settlement Agreement and Mutual Release (the "Settlement Agreement") is entered into as of the 10 day of March, 2022, by and among EDGE196 and Mr. Jaikrishna "Jay" Patel ("Plaintiffs") and Jointer, Inc. and its founder, Jude G. Regev, Jointer's CEO; ("Defendants") (collectively the "Settling Parties").

WHEREAS, Plaintiffs filed a complaint against Defendants in the United States District Court for the Southern District of Texas Houston Division alleging three breach of contract claims—(1) breach of the SAFE Agreement, dated March 16, 2018; (2) the License Agreement between the parties, dated August 12, 2019; and (3) the Addendum to the License for Jointer's Technology and Solutions, dated January 29, 2020—in addition to a claim for declaratory judgment under 28 U.S.C. § 2201 and a claim for breach of fiduciary duty. Plaintiffs filed an Amended Complaint on December 31, 2020 adding a fraud claim and a negligent misrepresentation and omission claim.

WHEREAS, the Settling Parties desire to memorialize their full and final compromise and resolution of the aforementioned Action and any related matters through this executed Binding Global Settlement Agreement that provides for the dismissal of the aforementioned Action, mutual releases, mutual non-disparagement, along with other terms; and

WHEREAS, the settlement in this case is contingent upon the return to Jay Patel of $250,000 paid to CoinTiger within seven (7) days of Jude Regev and Jay Patel sending a letter to CoinTiger requesting the return of the funds, funds owned by Mr. Patel, directly to Mr. Patel. All parties will work to take reasonable measures to secure the return of the funds. The timely return of the funds will trigger the filing of a notice of dismissal within another seven (7) days. Without the return of these funds, this entire Settlement Agreement is null and void and no notice of dismissal will be filed;

NOW, THEREFORE, in consideration of the foregoing and the mutual promises, undertakings, obligations and commitments set forth hereinafter, and intending to be legally bound, the Settling Parties do hereby covenant and agree as follows:

1. **Recognize Investment in SAFE:** Jointer/Jude agrees that Plaintiffs have made a $1,227,012 investment in Jointer under the SAFE Agreement dated March 16, 2018. Each and every Jointer investor falls within a class of investors, and each and every investor will be treated equally within his/her/its respective class of investment in accordance with applicable Securities laws. The JNTR-E token has not yet been issued to any investor.

2. **Tokens:** Mr. Patel shall have until December 31, 2022 to elect to receive Jointer tokens in lieu of some or all his $1,227,012 investment in the SAFE referenced above in ¶ 1. If Mr. Patel makes an election to receive tokens, Defendants agree to deliver to Mr. Patel a total of 1,227,012,000 JNTR tokens or a pro-rata portion of those tokens in proportion to the amount of the SAFE investment that was converted into tokens. Mr. Patel would pay to Jointer $1,227.01 (the token amount multiplied by 0.000001 (or the pro-rated portion), which reflects the discount

previously offered to investors). If this election is made, Mr. Patel will agree to sign the same distribution agreement that the other investors have signed, which is attached here to as Exhibit A. It been disclosed to Patel by Regev that the tokens have a current market value above $0.000001. The difference in value may trigger tax obligations, of which Defendants have advised Mr. Patel and Mr. Patel understands that any tax obligations will be his responsibility to timely report. Mr. Patel and EDGE196 agree to release Mr. Regev and Jointer from any allegation related to incurred tax obligations as a result of Mr. Patel's election to receive tokens under this Paragraph. In the event Jointer issues any additional token after December 31, 2022 that is a replacement or substitute token for JNTR, including the JNTR-E token, Mr. Patel will be to convert his $1,227,012 SAFE investment referenced above in ¶ 1 to the new token at the same initial price for the new token offered to other investors prior to the new token's launch. Each and every investor falls within a class of investors, and each and every investor will be treated equally within his/her/its respective class of investment in accordance with applicable Securities laws.

3. **Future Token and Future Token Conversion**: Jointer/Jude agrees that to the degree it issues future tokens representing equity in Jointer, including the JNTR-E token, it will allow its current equity holders to purchase those tokens in the proportion of their equity investment at the time of launch. To the degree a new form of JNTR tokens are issued, Jointer agrees to swap out the old JNTR token with the new JNTR token in a manner reflecting the total value of the original JNTR token. All investors will receive the same treatment and terms regarding new token issuance.

4. **Right to Change Jointer's Name:** Jude Regev and Jointer have the right to change the name of Jointer to any other name so long as the structure of the entity does not change. In the event such a name change occurs, JNTR tokens may be exchanged for tokens issued under the new name subject to the conditions in ¶ 3. Jointer/Jude agrees to notify all Jointer investors of any name change at least 30 days in advance of such a name change taking effect.

5. **License and Addendums**: Within thirty days of the execution of this agreement, Jointer shall deliver / re-deliver the latest version of the following items:

    - Copy of Jointer White paper.
    - Copy of Jointer tokenomics paper.
    - Copy of Jointer auction and IEO paper.
    - Copy of Jointer technical design paper.
    - Copy of Jointer SAFT contract.
    - Copy of Legal structure.
    - Copy of three coins code: (1) JNTR; (2) JNTR/x; and (3) JNTR/e.
    - Copy of an Auction page.
    - Hosting EDGE196 coin on Smart swap exchange. This means that Jude Regev and Jointer will provide a smart contract that allows EDGE tokens

     holders to swap between EDGE tokens. This is what Jointer created for JNTR/e and JNTR/b.
- Presentations including "one pager, multiple pages ppt, white paper, ppm, subscription agreement, etc. for using of such documents, diagrams, tables, charts, etc. for EDGE196 preparation" as stated in the License Agreement at Exhibit B.
- Jude Regev and Jointer will also convert Jointer documents to Venture Capital structure that applies to Startups, investors, service providers, etc. within EDGE196 ecosystem.
- Integration of EDGE196 wallet to Jointer.
- Solution for whitelist.
- Multiple smart contract between entities.

6. **Use of Code for Limited Purpose:** Mr. Patel and EDGE196 are permitted to use the material in any and all manners permitted by the License Agreement attached at Exhibits B. Furthermore, Defendants have no obligation for any future development (including but not limited to integration and/or backlog) and/or other obligation outside the original license agreement, as the code is being delivered "as is."

7. **Mutual Release:** Effective as of the date of receipt by the Plaintiff Group of the Settlement Payment:

   a. Each Plaintiff, together and individually, on behalf of themselves and each of their respective agents, representatives, and attorneys, in their capacities as such, and any successors, assigns, and heirs, agrees to release, and hereby releases, any and all claims and causes of action, of every kind and nature, whether known or unknown, arising against any of the Defendants and any of their respective parent, subsidiary, related and affiliated companies, and their respective divisions, branches, predecessors, successors, and assigns, as well as their respective past and present directors, officers, employees, agents, partners, members, representatives, attorneys, consultants, independent contractors, trustees, administrators, insurers and fiduciaries, in their capacities as such (collectively, the "Defendant Releasees") for, upon, or by reason of any matter, cause or thing arising from the beginning of the world to the date of execution of this Settlement Agreement, including, but not limited to, the following: (i) claims arising under the federal or any state constitution; (ii) claims arising under any federal or any state or local statute; (iii) claims for wrongful termination, breach of contract, breach of public policy, physical or mental harm or distress, fraud, negligent misrepresentation or omission, and breach of fiduciary duty; (iv) any claim for attorneys' fees and costs; (v) any and all other claims arising from the Plaintiffs' relationships, together or individually, with any Defendant or any of their respective affiliates, or the termination of any of such relationships, or (vi) any and all claims that were or that could have been asserted in this Action. Each Plaintiff agrees that the release set forth

in this ¶ 7(a) shall be and remain in effect in all respects as a complete general release as to the matters released.

b. Each Defendant, together and individually, on behalf of themselves and each of their respective agents, representatives, and attorneys, in their capacities as such, and any successors, assigns, and heirs agrees to release, and hereby releases, any and all claims and causes of action, of every kind and nature, whether known or unknown, arising against any of the Plaintiffs, and any of their respective parent, subsidiary, related and affiliated companies, and their respective divisions, branches, predecessors, successors, and assigns, as well as their respective past and present directors, officers, employees, agents, partners, members, representatives, attorneys, consultants, independent contractors, trustees, administrators, insurers and fiduciaries, in their capacities as such (collectively, the "Plaintiff Releasees") for, upon, or by reason of any matter, cause or thing arising from the beginning of the world to the date of execution of this Settlement Agreement, including, but not limited to, the following: (i) claims arising under the federal or any state constitution; (ii) claims arising under any federal or any state or local statute; (iii) claims for wrongful termination, breach of contract, breach of public policy, physical or mental harm or distress, fraud, negligent misrepresentation or omission, and breach of fiduciary duty; (iv) any claim for attorneys' fees and costs; (v) any and all other claims arising from the Plaintiffs' relationships, together or individually, with any Defendant or any of their respective affiliates, or the termination of any of such relationships, or (vi) any and all claims that were or that could have been asserted in this Action. Each Defendant agrees that the release set forth in this ¶ 7(a) shall be and remain in effect in all respects as a complete general release as to the matters released.

c. The Settling Parties do not release any rights or claims against each other to enforce the terms of this Settlement Agreement.

8. **Covenant Not to Sue:** No Plaintiff, together or individually, nor any of their respective representatives, will institute or prosecute any action or suit at law or in equity against the Defendants Releasees asserting a claim released under ¶ 7(a), or in any way instigate, encourage, facilitate, aid or assist in the institution or prosecution of any claim, demand, action, or cause of action against the Defendant Releasees in respect of the subject matter of a claim released under ¶ 7(a), except as may be required by applicable law. Neither Defendant, together or individually, nor any of their respective executive officers or directors, will institute or prosecute any action or suit at law or in equity against Plaintiff Releasees asserting a claim released under ¶ 7(b), or in any way instigate, encourage, facilitate, aid or assist in the institution or prosecution of any claim, demand, action, or cause of action against the Plaintiff Releasees in respect of the subject matter of a claim released under ¶ 7(b), except as may be required by applicable law. This covenant not to sue shall not apply to any action by any Settling Party to enforce the rights and

DocuSign Envelope ID: 4DEE4B7F-7C24-426C-9556-88F8DAB990A2

obligations pursuant to this Settlement Agreement. Any person named in a suit brought in violation of this ¶ 8 shall be entitled to injunctive relief.

9. **Mutual Non-Disparagement:** Each Plaintiff, including any spokespersons, on the one hand, and each of the Defendants, including their respective spokespersons, directors and officers, on the other hand, agree to refrain from any disparagement of the other party or any of its services or practices, except as may be required in a judicial or other governmental proceeding. Nothing contained in this ¶ 9 shall be deemed to prevent lawful competition between (and reasonable comparative statements relating to) the businesses, products or services of any party hereto.

10. **Entire Agreement:** This Settlement Agreement represents the entire agreement and understanding among the Settling Parties with respect to the subject matter hereof and fully supersedes any and all prior or contemporaneous agreements, understandings, negotiations and discussions, both written and oral, among the Settling Parties with respect to the same.

11. **Modification:** This Settlement Agreement and the terms hereof may not be amended, modified, canceled, waived, changed or otherwise altered in any way, in whole or in part, except by a written agreement executed by the parties hereto.

12. **No Presumption:** This Settlement Agreement has been drafted and reviewed by the Settling Parties and their respective counsel, and no presumption in constructions or interpretation shall be applied for the benefit of or against either of the Settling Parties. This Settlement Agreement and the correspondence, discussions and negotiations regarding the subject matter of this Settlement Agreement and the Term Sheet are being undertaken for the purpose of settlement of a contested claim to avoid the burden, expense and delay of further dispute resolution procedures. In no event shall this Settlement Agreement or the correspondence, discussions and negotiations regarding the subject matter of this Settlement Agreement and the Term Sheet be used or construed in any claim, action, litigation or proceeding, as evidence or an admission of liability or wrongdoing by any of the Settling Parties.

13. **Governing Law; Jurisdiction:** This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of California, without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the State of California. The Settling Parties agree that the United States District Court for the Northern District of California, shall have exclusive jurisdiction over any action or proceeding with respect to this Settlement Agreement and the rights and obligations arising hereunder.

14. **Successors and Assigns:** This Settlement Agreement shall extend to, inure to the benefit of, and be binding upon the parties hereto and their respective directors, officers, partners, proprietors, attorneys, agents, servants, employees,

representatives, affiliates, subsidiaries, shareholders, predecessors, successors, and assigns.

15. **Severability:** If any provision of this Settlement Agreement or the application of any provision of this Agreement is held by a tribunal of competent jurisdiction to be contrary to law, the remaining provisions of this Settlement Agreement shall remain in full force and effect and this Settlement Agreement shall be interpreted as if such invalid provision(s) were omitted.

16. **Execution in Counterparts:** This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which taken together shall be considered one and the same instrument, it being understood that all of the Settling Parties need not execute the same counterpart.

17. **Waiver:** No waiver by any party to this Settlement Agreement of any breach of any term or provision of this Agreement shall be a waiver of any preceding, concurrent or succeeding breach of this Agreement or of any other term or provision of this Agreement.

3/24/2022

Patel's agreement is conditioned on Jointer/Jude agreeing to an amendment of paragraph 1 pertaining SEC, which is attached.

Date: February _____, 2022

Edge196, LLC and Jaikrishna Patel: _____

*Jaikrishna Patel*

Jointer, Inc. and Jude Regev:   DocuSigned by: Jude Regev
8DA10A8443D6462...

*Jude Regev*

6

DocuSign Envelope ID: 5BEFC684-A023-49A9-B0C1-ED814E962875

## Amendment to Paragraph 1 of the Global Settlement Agreement and Mutual Release

Plaintiffs and Defendants hereby amend Paragraph 1 of the Settlement Agreement and Mutual Release (the "Settlement Agreement") entered into as of the 10 day of March , 2022 by adding the following language at the end of paragraph 1:

> The issuance of any tokens by Jointer, currently issued or issued in the future, shall comply with any and all applicable rules and regulations of the Securities and Exchange Commission. If the SEC determines that any token that has been, or will be issued represents equity in Jointer, then Jointer will comply with the terms of the SAFE Agreement regarding conversion rights.

Date: March 27, 2022

Edge196, LLC and Jaikrishna Patel: _____

*Jaikrishna Patel*

Jointer, Inc. and Jude Regev: _____
(DocuSigned by: Jude Regev, 8DA10A8443D6462)

*Jude Regev*